A. J. HUBLER, Respondent, *v.* W. H. GASTON AND G. W. FURRY, partners under the firm name of GASTON & FURRY, Appellants.

CONTRACT—PRESENT RIGHT OF PROPERTY DOES NOT ATTACH UPON AGREEMENT TO DELIVER ON DEMAND.

Where H. buys of G. & F. a certain number of bushels of oats of a described quality, for which payment is then made, and they agree to deliver that quantity and quality of oats, in good sacks, on board of the cars when demanded, etc.: *Held*, that a present right of property did not attach in H.

DELIVERY OR IDENTIFICATION NECESSARY TO PASS RIGHT TO GOODS PURCHASED.

Where the defendants, after admitting the allegation of a complaint which shows a present right of property in the oats sold did not attach in the plaintiff, and then to avoid the effect of their admission, allege, as a defense, that "after the sale of the oats, plaintiff left them in the defendants' warehouse," etc., without alleging any fact to show that the oats sold had been identified, or appropriated to the contract by which the right of property passed to the plaintiff: *Held*, that such answer was not a defense.

APPEAL from Linn county.

The complaint alleges, in substance, that on the 20th day of September, 1879, defendants sold to plaintiff, two thousand bushels of bright, merchantable white oats, for the sum of seven hundred and sixty dollars, and agreed to deliver the same to plaintiff, in good sacks, on board of the cars at Albany, whenever called for by plaintiff. That plaintiff then and there paid defendants the said sum of seven hundred and sixty dollars for said oats. That afterwards, on the 14th day of November, 1879, the plaintiff demanded said oats of the

defendants, and defendants refused and still refuse to deliver the same or any part thereof to the plaintiff, to the damage of the plaintiff in the sum of seven hundred and sixty dollars.

There are three other causes of action set forth in said complaint, which it is not necessary to recite.

The answer admits the facts alleged in the complaint, except damages, and sets up separate matter as a defense, which is denied in the reply, all the facts in respect to which appear in the opinion of the court.

*Powell & Bilyeu, and R. S. Strahan,* for appellants.

The sale of the oats, as alleged in the complaint, passed the title thereto from appellants to respondent at the time of the sale. (Benjamin on Sales, secs. 313, 315, 316, and note b., page 259; 2 Bouvier's Law Dictionary, 493; 8 Howard, U. S., 495, 545; 51 N. Y., 431.)

The destruction of the oats by fire, under the circumstances alleged in the answer, constituted a sufficient excuse for their non-delivery when demanded. (Benjamin on Sales, secs. 308, 570.)

Delivery is not necessary to pass title. (102 Mass., 444; 13 Allen, 28, and Benjamin on Sales, sec. 1.)

*L. Flinn,* for respondent.

The title to the oats never passed, and could not pass, under the terms of the contract, until they were selected and delivered after demand, or until they were delivered and accepted before demand. The contract was executory, and could have been filled by the delivery of any oats of the kind and quality mentioned. (Benjamin on Sales, secs. 308, 310, 312; note d.; 52 N. Y., 550; 11 Cush., 573; 1 Cal., 395; 27 Cal., 451; 51 N. Y., 288; 2 Kent's Com., 496; 111 Mass., 10; 13 Pick., 213; 47 Barb., 73; 35 Maine, 385; 19 Ohio St., 375; 20 Id., 295.)

By the Court, LORD, C. J.;

Two questions are presented by this record. First, do the

facts, as admitted by the pleadings, show an executory or an executed contract? And, second, if executory, does the answer set up a sufficient defense of new matter? A contract is said to be executory when there remains something to be done, the performance of which is a condition precedent to the transfer of the property, and executed when the thing and price have been assented to, and nothing remains to be done to prevent the transfer of the property.

In Blackburn on Sales, 151 and 152, it is said that it is for the benefit of the vendor that the property should be transferred at the time the sale is made, for the reason that it transfers the risk to the purchaser, etc.; but if by the agreement the vendor is to do something before the purchaser would be bound to accept the goods in accordance with the terms of the agreement, the intention of the parties should be taken to be that the vendor was to do this before he obtained the benefit of the property.

Where the parties have made an agreement, or agreed by their pleadings on a certain statement of facts, which leaves in doubt what was intended and meant, the courts have adopted and applied certain rules of construction for the solution of the controversy arising out of such agreement or agreed statement of facts.

It is laid down as a fundamental principle pervading everywhere the doctrine of the sale of chattels, that if goods be sold by number, weight or measure, the sale is incomplete, and the risk continues in the seller until the specified property be separated and identified. (2 Kent's Com., 496.)

It does not alter the principle that the payment for the goods has been made in whole or in part, nor that they are unfit for delivery at the time of the sale. To overcome the presumption that the sale is incomplete, and the contract executory, there must be some further act of the parties to express the intention that the title shall be complete and executed. The principle applying to such sales is, "that the contract is only executory when the goods have not been

specified, or if specified, something remains to be done to them to put them in a deliverable shape, or to ascertain the price." (Benjamin on Sales, sec. 315.)

In *Wilkinson* v. *Holiday*, 33 Mich., 686, this doctrine of the law is accurately stated by Chief Justice Cooley, who says: "Where, under a contract for the purchase of personal property, something remains to be done to identify the property, or to put it in a condition for delivery, or to determine the sum that shall be paid for it, the presumption is always very strong that by the understanding of the parties the title was not to pass until such act had been fully done and accomplished."

The general principle of all the authorities is that no sale is complete so as to vest in the vendee an immediate right of property so long as anything remains to be done between the buyer and seller in relation to the thing sold. (Chitty on Contracts, 396, 397; Story on Sales, sec. 296, and authorities cited.)

Applying these principles to the facts admitted, we are to ascertain whether the oats sold were identified, or whether anything remained to be done to them by the vendor to put them in a deliverable shape. It will be admitted, if the goods sold are sufficiently designated, so that no question can arise as to the thing intended, that it is not absolutely essential that there should be a delivery, or that the goods should be in a deliverable condition; but, if the goods sold are not identified, the sale is incomplete, and the contract is executory.

The contract of sale cannot attach until the parties are agreed on the identical thing to be transferred. The facts admitted are that appellants sold to the respondent two thousand bushels of bright, merchantable white oats, for the sum of seven hundred and sixty dollars, for which payment was then received, and agreed to deliver the same, in good sacks, on board of the cars at Albany, when called for by the respondent. The quantity and quality of the oats are specified,

and the price fixed and paid, but the identity of the oats sold is not ascertained. Any oats of that quantity and quality, put in good sacks and put on board of the cars when demanded by the vendee, would fulfill the terms of the contract on the part of the vendor.

Such contract is for the sale of a certain quantity of goods in general, and cannot be regarded as any more than a contract to supply, on demand, any other oats of like quality and quantity. This is inconsistent with an intention to transfer some particular, identified oats, and no other, when the oats were sold and the price paid. There must be some separation or identification of the oats sold, so as to completely distinguish them from all other similar oats, or the intention to transfer the property is not manifest, and the sale is executory.

There is some conflict of authority where the sale is made of a lesser out of a greater quantity, uniform in kind and quality. The English courts adhere to the rule that as between the vendor and purchaser, *separation* of the quantity sold from a larger bulk, identical in kind and quality, is necessary before the title will pass, although it is said that very slight and unimportant circumstances will take the transaction out of the rule in those courts.

In the American courts the cases on this subject are quite conflicting. In Virginia, New York, Connecticut, Maine and New Jersey, the courts hold that where the subject matter of the sale is part of an ascertained mass of uniform quality and value, the property will pass though there be no separation of the quantity sold, if such be the intention of the parties, and that no rule of law will overrule that intention, if it be otherwise clearly expressed. (*Chapman* v. *Shephard,* 39 Conn., 420; *Kimberey* v. *Patchin,* 19 N. Y., 330; *Russell* v. *Carrington,* 42 N. Y., 118; *Waldron* v. *Chase,* 37 Maine, 414; 44 N. J., 486; 6 Randall, 473.)

In such cases the bulk, or mass, is ascertained or identified, and of uniform kind and quality, and when inspected or ap-

proved by the purchaser, and the contract price paid, there does not seem to us to be any valid reason that until the quantity purchased is separate, the title to the property will not pass. But it does not appear from the facts admitted that the oats sold were a part of an ascertained mass or bulk of uniform kind and quality, which required to be separated.

The conclusion we reach is, that upon the facts admitted in the complaint the oats sold were not ascertained or identified, and a present right of property did not attach in the buyer. Any similar oats of that quantity and quality would comply with the terms of the contract, and until the oats sold were identified, the contract of sale could not attach, nor could the respondent be the owner of "the said two thousand bushels of oats." Some act of selection or identification of the oats sold must first take place before the title to any oats would vest in the respondent.

But the appellants, after admitting facts the legal consequence of which was not to vest the title in the respondent, and make him the owner of the oats sold, and without averring any fact of identification, by which the title to the oats sold would be changed and vested in the respondent, and the legal conclusion arising from the facts admitted in the complaint, destroyed, allege, as new matter, and by way of defense, " that after the sale of said two thousand bushels of oats to the plaintiff by the defendants, the plaintiff left said oats in defendants' warehouse in Albany, Oregon," etc. It is not possible, and logically cannot be true, that respondent could leave " said two thousand bushels of oats in defendants' warehouse," when " the said two thousand bushels of oats " had not been identified, and respondent was not the owner of " said two thousand bushels of oats."

Appellants cannot admit facts which show the oats were not identified, and as a consequence, not the property of the respondent, and then aver that respondent "left said oats in defendants' warehouse." Before appellants can avoid the effect of their admission, they must allege some fact at the time

of the sale, or after the sale, by which the identity of the oats sold was ascertained, and respondent became the owner of them, and then they can allege, consistently, and notwithstanding their admission of the facts in the complaint, that the respondent left said oats in defendants' warehouse.

If, for instance, at the time of, or after the sale, any oats had been inspected by the respondent, and with his approval put in sacks and set aside, or had formed a part of an ascertained mass of uniform quality and value out of which it was agreed that the two thousand bushels of oats sold should be taken, although not separated; or, if there were any facts of identification, of whatever nature, or appropriation of the oats by respondent, and such fact or facts of like import, had been alleged in the separate answer, *then* the appellants could allege, consistently and logically, that respondent "left said oats in defendants' warehouse."

The theory of appellants' answer was based on the proposition assumed in the argument, that the facts alleged in the complaint, and admitted to be true, showed an executed contract, and the title of the oats sold in respondent, and in that view the matter set up in the answer would be consistent. It was upon this theory that counsel attached so much importance to the word "sold" in the complaint, which, from the ability of the argument, is deserving of notice.

In *Russell* v. *Nicoll*, 3 Wendell, 118, the words used in the contract were: "Sold by Daniel Rapale, for our account, to R. M. and J. Russell, five hundred bales of cotton," etc., and the court said, in commenting on the interpretation to be given to the word "sold:" "If the contract be executory, and such it evidently is, the same interpretation must be given to the word *sold* that was given to it in the case of *Boyd* v. *Griffkin*, 2 Conn, 326. It means *contracted to sell*." In *Ormsbee* v. *Machir and Renick*, 20 Ohio State R., 295, the contract was reduced to writing, and consisted of two instruments signed and interchangeably delivered by each party to the other. One began in these words: "I have this day sold

to O. Ormsbee, eight thousand bushels of ear corn, to be delivered on board of canal boats at West Fall," etc.; and the other: "I have this day bought of Charles Machir, eight thousand bushels of ear corn, to be delivered on board of canal boats," etc., and the court held the contract to be executory. Neither the counsel nor the court gave any attention to the words "sold" or "bought," as affecting the conclusion whether the sale was executed or executory. But in that case, as in this, the question of the identity of the eight thousand bushels of ear corn sold by the contract was involved. Counsel for the plaintiff in error claimed that by the written contract there was a contract for the sale and future delivery of a *specified quantity*, but of no *particular lot*, of ear corn, and one of the counsel for the defendants in error said the important question was whether there was a sale of certain specified corn, or merely a contract for the sale of corn in general, and admitted that the contract, as written, was for the sale of no specific corn. The court said: "The contract, by its terms, is for the sale of a certain quantity of corn in general, and for aught that appeared, it would have been competent for the plaintiff to have performed it by the delivery of any corn of the quantity and quality called for."

From these views it follows that the judgment of the court below is affirmed.

Judgment affirmed.