FIRST NATIONAL BANK OF WILSON v. F. W. JOHNSTON AND BARNES & DICKINSON.

(Filed 12 March, 1913.)

1. Attachment—Principal and Agent—Principal and Surety—Judgment in Former Action—Payment—Property Subject to Levy.

A nonresident of this State sued a resident hereof in our courts upon a note secured by a chattel mortgage on personal property situated here, and in an attachment proceeding gave the required bond with an indemnity company as surety, and through its agents and attorneys, who also represented the surety, sold the mortgaged property. In that proceeding the defendant recovered damages to the value of the property thus sold against the plaintiff therein and his surety, which was paid by the latter. The present action is on a note made by the plaintiff and defendant in the first named action, and on attachment issued against the proceeds of sale of the property therein which had been paid into court: *Held*, upon the payment of the judgment for damages in the first named action, the title to the property seized passed from the estate of the original owner to the plaintiff in the claim and delivery proceedings, who is co-defendant here, and this seizure and sale having been at such defendant's suit and by his attorney's both in law and fact, the property should be considered his, subject to the rights of the present plaintiff under attachment levied, unless it is shown that the ownership has been altered or in some way affected.

2. Principal and Agent—Principal and Surety—Equitable Assignment—Evidence—Possession.

Under the circumstances in this case it is held that the agents or attorneys for the nonresident defendant hold the proceeds of the sale thereunder for such nonresident defendant, and not for the indemnity company, surety in the claim and delivery proceedings, and that nothing in the evidence tends to show a pledge or equitable assignment thereof by the agents to the surety, for such required the delivery of possession, or that it was held by the agent for the surety, and the paper-writing relied on for this purpose shows, at most, that the moneys were only to be retained by the agents within the jurisdiction of our courts.

3. Attachment—Custodia Legis—Property Subject to Levy.

The principle that property in *custodia legis* is not subject to a levy under an attachment does not prevail where the interest of an individual or litigant has been finally ascertained or de-

clared to be his, and there is no writ or mandate or judgment of the court, in the claim and delivery proceedings, which requires its further retention.

APPEAL from *Daniels, J.,* at November Term, 1912, of WILSON.

Civil action. The action was to recover on a note for $2,500, subject to some credits executed by defendant F. W. Johnston and one James Mulligan, deceased, to plaintiff bank. Johnston being a nonresident, summons was duly served by publication as to him, and, on attachment issued in cause, same was levied on $2,500 held by Barnes & Dickinson, also made parties defendant. It was claimed by said defendants Barnes & Dickinson that they held said $2,500 as attorneys for the United States Fidelity and Casualty Company, a corporation that had gone on Johnston's bond in a certain claim and delivery proceeding by said Johnston against Mulligan. To determine this question, an issue was submitted to the jury as follows: "Did the defendants Barnes & Dickinson hold the funds received by them from the sale of the property seized in the case of *Johnston v. Mulligan's administrators,* in pledge, or otherwise, to indemnify the United States Fidelity and Guaranty Company upon the bonds executed by Johnston upon which the United States Fidelity and Guaranty Company was surety? Answer: No."

The court charged the jury that if they believed the evidence to answer the issue "No," and the jury so rendered their verdict. Thereupon the court gave judgment establishing an indebtedness of Johnston on the note at $2,125, with interest, and that the money seized by process and attachment to the extent required be applied in payment. Defendant excepted and appealed.

*F. S. Spruill for plaintiff.*
*Barnes & Dickinson and Connor & Connor for defendants.*

HOKE, J., after stating the case: It appeared in evidence that defendant Johnston, claiming to hold an unpaid note against one James Mulligan, now deceased, with a chattel mortgage to secure same on a large amount of personal property, instituted claim and delivery for the property, and the same was

seized and sold by advertisement, defendants Barnes & Dickinson being Johnston's attorneys in the cause and conducting the sales, and the money seized and held under attachment in the present suit being a part of the proceeds of said sales; that Barnes & Dickinson, at the time of suit instituted, were also agents of the United States Fidelity and Guaranty Company and acting for said company, and, after conferring fully with their principal, signed the replevy bonds in the claim and delivery proceedings. This last action coming on for trial, in due course it was established that the $12,000 note secured by the chattel mortgage had been paid, and the findings and facts admitted showing that the property seized had all been sold by Johnston or his attorneys to various persons throughout the community, an issue was submitted as to its value, and the same was fixed at $5,900, and judgment for said sum duly entered against said Johnston and the surety on the replevy bond, to wit, the Fidelity and Guaranty Company; that prior to said judgment, the present attachment was issued and levied on the proceeds from the sales of the personal property, under the mortgage, in the hands of Barnes & Dickinson, to the amount of $2,500, and on the rendition of said judgment Barnes & Dickinson applied the remainder of such proceeds on the above judgment, and the balance due on such judgment was paid by the indemnity company, satisfying the same in full. On the payment of the judgment for damages, the title to the property seized passed from the estate of Mulligan, the original owner, and its representatives (*Brickhouse v. Brickhouse,* 33 N. C., 404; *White v. Marlin,* 1 Porter, 215; 28 A. and E., p. 738), and this seizure and sale having been made at the suit of Johnston and by his attorneys both in law and fact, Barnes & Dickinson, the property or its proceeds should be considered as Johnston's, subject to the rights of plaintiff under the attachment, unless it is shown that the ownership has been altered or in some way affected. On careful perusal of the record, we find no facts, amounting to legal evidence, which tend to establish any such change. From the testimony of Mr. Dickinson, who seems to have dealt with both principals in perfect fairness and to have made a frank and satisfactory statement of

BANK *v.* JOHNSTON.

the facts, this firm, as stated, represented Johnston in the suit, and furthermore held a written power of attorney, under seal, from him, conferring ample authority to act for him in the premises, both in the suit and subsequent sale and disposition of the proceeds, and the only part of his testimony having any tendency to sustain a claim in behalf of the Fidelity Company is that when he writes to his principal as follows: "We would have hesitated to execute these two bonds for F. W. Johnston if we had not been attorneys for him and thus in a position to protect the company. Each of these bonds simply guarantees to return property or its value, as the court may direct, and since the property will be sold next Monday, 9 August, as the inclosed notice will show, we expect to have the net proceeds of the sale put in the bank, where it will remain until the final judgment is rendered. Of course, we would not think of executing these bonds and then send the proceeds of the sale out of the State until it is determined in court which of the litigants is entitled to the money." The utmost that could be claimed here, in our view, was an agreement not to allow the money to leave the State; but there is no suggestion in this communication that the writer or his firm held the proceeds, while in the State, otherwise than for Johnston. It is urged that the facts should be held to make out a pledge in favor of the company or an equitable agreement to make one, but it is familiar learning that, to establish a pledge, there must be a delivery of the possession there (*McCoy v. Lassiter,* 95 N. C., 88), and in our view, there was neither such charge shown in this statement nor any agreement to make one. Again, it is suggested that attachment would not lie, because the proceeds of this property should be considered and dealt with as in *custodia legis.* There are many cases which hold that property in *custodia legis* is not, under certain circumstances, liable to be levied on by attachment, but in this State the principle is not allowed to prevail where the interest of an individual or litigant has been ascertained or declared and is no longer required by the exigency of some court writ or mandate or decree. *Leroy v. Jacobosky,* 136 N. C., 458; *Gaither v. Ballew,* 49 N. C., 488; *Boylan v. Hines,* 13 L. R. N., N. S., 759.

In the case before us, the judgment awarding damages for the property wrongfully seized has been fully satisfied. The title to the property or its proceeds are in the hands of Barnes & Dickinson, attorneys for F. W. Johnston, the plaintiff's debtor, or were at the time of the attachment levied; there is no writ or mandate or judgment of the court, in the claim and delivery proceedings, which requires its further retention, and we concur with his Honor in the ruling that on the evidence, if believed, it was subject to the attachment issued in plaintiff's suit. There is no error, and the judgment of the Superior Court is affirmed.

No error.