Argued at Pendleton May 8, affirmed June 4, 1918.

## DAVIDHIZAR v. ELGIN FORWARDING CO.

### (173 Pac. 893.)

**Attorney and Client—Powers of Attorney—Satisfaction of Judgment.**

1. Under Section 1083, L. O. L., authorizing attorney to discharge claim and acknowledge satisfaction of judgment, where client obtained judgment for return of property or for its value, his attorney had power to satisfy the judgment upon payment of the assessed value.

**Replevin—Satisfaction of Judgment—Effect.**

2. Where owner of wheat attached by sheriff secured judgment against sheriff for the wheat or its value and accepted the assessed value in cash from the sheriff, title was transferred to the sheriff.

**Sales—Transfer of Title—Executory Contracts.**

3. A letter confirming sale of wheat to be delivered upon certain terms as soon as threshed was a mere executory contract, passing no present title, and insufficient to support replevin by the purchaser of the wheat.

**Replevin—Satisfaction of Judgment—Effect.**

4. Where sheriff with attachment against a debtor levied it on wheat found in possession of the debtor's brother, and took the wheat to recover which the brother maintained replevin, securing judgment for the wheat or its value, and accepted the cash value of the wheat, it was immaterial whether the forms for attaching property in the hands of a third person were followed, since the satisfaction of the judgment in replevin transferred the title to the sheriff.

**Attachment—Bailee of Sheriff.**

5. Where defendant, having executory contract to buy wheat from third person, accepted the wheat from the sheriff, who had attached it in such person's hands, and issued warehouse receipts to the sheriff it became the sheriff's bailee, and in a way attorned to him.

**Sales—Transfer of Title—Executory Contracts—Performance—Acts in Derogation.**

6. Where owner of wheat had executory contract to sell it to defendant, but on the way to the warehouse it was attached by the

sheriff, who sent note to defendant, requiring it to hold the wheat for it, the owner's act in delivering the wheat was not in performance, but in derogation of the contract to sell the wheat, and the defendant acquired no title, but merely possession as bailee of the sheriff.

**Sales—Transfer of Title—Delivery to Sheriff.**

7. Where a third person contracted to sell wheat to defendant, and while he was delivering it, it was attached by the sheriff, since it was competent for him, under Section 304, L. O. L., to deliver the property to the sheriff, when the sheriff then delivered it to the defendant as his own bailee and received warehouse receipts from defendant, defendant could not say that the delivery amounted to performance of the executory contract.

[As to replevin for property seized under execution, see notes in 20 Am. Dec. 696; 80 Am. St. Rep. 751.]

From Wallowa: JOHN W. KNOWLES, Judge.

In Banc.

This is an action wherein the plaintiff, claiming to be the owner thereof, seeks to recover the immediate possession of 531 bags of wheat, covered ·by the defendant's nine warehouse receipts. The complaint is in the usual form, alleging the detention of the property by the defendant in Wallowa County and claiming damages as usual in such actions.

It is alleged in the complaint and admitted by the answer that the plaintiff demanded possession of the grain from the defendant prior to the commencement of the action, but that the same was refused by the defendant. The answer denies that the plaintiff is the owner of or entitled to possession of the grain, and traverses the allegation that the defendant is in possession of the property and unlawfully detains the same from the plaintiff. It alleges that the wheat in question is a portion of that grown and owned by one Ed Simmons during the season of 1916, and that on August 26th of that year he sold to the defendant the entire crop, consisting of about 3,000 bushels, including the portion described in the complaint. The

answer claims that the wheat was delivered to the defendant by virtue of the terms of the sale from Simmons to the defendant, and that ever since then the latter has been in possession of all the wheat.

The reply admits that the wheat was part of the Ed Simmons crop, but denies all the other averments of the answer. For further reply a history is given of an action instituted by this plaintiff against one J. D. Simmons on a promissory note from him to the plaintiff, including the issuance of a writ of attachment, armed with which, Edgar Marvin, the sheriff of Wallowa County, attached the grain in question as the property of J. D. Simmons; and that afterwards Ed Simmons sued Marvin in replevin for the wheat so attached and recovered judgment in the alternative for the delivery of the property or for the value thereof assessed by the jury, if delivery could not be had. It is averred also that, having attached the property, the sheriff delivered the same to the defendant and took its warehouse receipts in his name in the usual statutory form; and that after Ed Simmons had recovered the alternative judgment named, the defendant sheriff paid the money judgment for the value of the wheat to Ed Simmons, who accepted the same and satisfied the judgment of record.

At the close of all the testimony both parties moved for a directed verdict and the court ordered the jury to return a verdict for the plaintiff for the recovery of the possession of the property or in default thereof for the value assessed at $2,182.65. The defendant appeals.                               AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. A. W. Schaupp* and *Mr. Francis S. Ivanhoe.*

For respondent there was a brief over the names of *Mr. James A. Burleigh* and *Messrs. Boyd & Hawkins,* with an oral argument by *Mr. Burleigh.*

BURNETT, J.—Substantially the following facts appear in evidence: On August 26, 1916, Ed Simmons addressed to the Elgin Forwarding Company and signed the following writing:

"We confirm sale to you of about 3,000 bushels F. F. wheat, basis No. 1 Portland grading (or my entire crop of 80 acres, with reservation of 40 bags for seed and feed) at $1.15 per bushel, f. o. b. warehouse, Joseph, Oregon, Elgin Forwarding Co. to furnish bags and sack twine. Delivery as soon as threshed, 1916. Amount advanced $200.00."

Afterwards the plaintiff here commenced an action against J. D. Simmons upon a promissory note and caused an attachment writ to be issued and placed in the hands of Edgar Marvin, the sheriff of the county, with directions to attach the wheat in question as the property of the debtor in the writ. With the writ in his possession the sheriff met Ed Simmons on his way to Joseph with some of the wheat loaded on wagons, and told him that the wheat was attached and to take it to the Elgin Forwarding Company and have it stored in the name of Edgar Marvin. The officer also made arrangement with Ed Simmons to haul in the rest of the crop and deliver it to the defendant to be stored in Marvin's name. At the same time the sheriff wrote and sent to the defendant by Simmons the following message:

"Enterprise, Ore., Oct. 31, 1916.
"Elgin Ford. Co.,
"This grain is under attachment and you will please accept it in my name; 2 loads today 70 sacks, and all other that they will haul this week.
"EDGAR MARVIN."

1. In pursuance of this arrangement the defendant accepted from Ed Simmons the two loads mentioned in the writing just quoted, and the balance of the crop in question remaining on the farm, and issued to Marvin receipts covering the same in the usual warehouse form.

Still later Ed Simmons commenced the action of replevin against the sheriff and recovered the usual alternative judgment, the value being assessed at $1,328. Soon after the rendition of this alternative judgment in favor of Simmons against Marvin the latter paid the money value thereby assessed and Simmons by his attorneys accepted the same and satisfied the judgment in full, entering upon the margin of the record of the judgment the following writing:

"State of Oregon,
  County of Wallowa,—ss.

"January 6, 1917.
  "In consideration of the payment of the within judgment full and complete satisfaction of the within judgment is hereby acknowledged."

This was signed by one of the attorneys for Ed Simmons and attested by the county clerk. The satisfaction of the judgment was within the authority of the attorney under Section 1083, L. O. L., reading thus:

"An attorney has authority, * *
  "2. To receive money or property claimed by his client in an action, suit, or proceeding, during the pendency thereof, or within three years after judgment or decree, and upon the payment or delivery thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment or decree."

2. The evidence is ample that Simmons accepted the money and applied it to payment of his own obligations, having knowledge of all the facts and transactions from which the money was derived. This

amounts to a ratification of the discharge of the judgment independent of the attorney's statutory authority. The operation of this transaction was to transfer the title to Marvin.

The plaintiff here furnished the money with which Marvin satisfied the judgment and the latter indorsed to him the warehouse receipts which the defendant had issued. The plaintiff then presented these receipts to . the defendant and demanded possession of the wheat represented thereby. The latter refused to surrender the grain and Davidhizar brought this action resulting in the alternative judgment in his favor against the Elgin Forwarding Company involved in this appeal.

3. In effect both parties attempt to deraign title from Ed Simmons. The writing upon which the defendant relies, considered most favorably for its contention, is not more than an executory contract that does not pass any present title and will not support replevin: *Hubler* v. *Gaston*, 9 Or. 66 (42 Am. Rep. 794); *Rosenthal* v. *Kahn*, 19 Or. 571 (24 Pac. 989); *Hamilton* v. *Gordon*, 22 Or. 560 (30 Pac. 495); *La Vie* v. *Crobsy*, 43 Or. 612 (74 Pac. 220); *Gile & Co.* v. *Laselle, post,* p. 107 (172 Pac. 741). Under this instrument the defendant had no title to the wheat and it was competent for Ed Simmons to transfer the title to any third person, incurring the risk, of course, of an action of damages by the Elgin Forwarding Company for breach of his executory contract.

4. Much has been said in the briefs and argument about the invalidity of the attachment, the claim being that when property is found in the hands of a third person it shall be attached by leaving a notice of garnishment with that individual and hence that the act of the sheriff in taking possession of the property from Ed Simmons under a writ of attachment against J. D.

Simmons was void and inoperative. The attachment, however, is not the vital factor in the case. So far as that is concerned it is immaterial whether Marvin took the property under the forms of law, as by attachment, or by force without the consent of Simmons. The title to the property as between Simmons and Marvin is to be determined by the legal effect of the satisfaction of the judgment which the former recovered against the latter. Simmons, who was in the rightful possession and ownership of the property when the sheriff took custody of it, had a right to maintain replevin for it. Having recovered the usual alternative judgment, it was within the power of Simmons and Marvin to make such composition of it as they saw fit. Marvin could have satisfied it if he chose, by returning the property, and this whether Simmons was willing to receive it or not. On the other hand, Simmons had no right to the money judgment if delivery of the property could be had. But it was competent for Simmons to accept Marvin's offer to pay the money and to satisfy the judgment. This was done and the legal effect of accepting the money judgment is to pass the title to the wheat from Simmons to Marvin: Cobbey on Replevin (2 ed.), §§ 1174, 1178; *First Nat. Bank* v. *Johnston,* 161 N. C. 506 (77 S. E. 404) ; *Duroth Mfg. Co.* v. *Cauffiel,* 243 Pa. 24 (89 Atl. 798). It is analogous to the situation in actions of trover where the plaintiff seeks to recover damages for the conversion of his property. On satisfaction of a judgment for damages the title to the property passes to the judgment debtor. Some authorities are collated in *Acheson* v. *Miller,* 2 Ohio St. 203 (59 Am. Dec. 663).

5. When it accepted custody of the wheat from Marvin and issued to him its warehouse receipts for the same, the defendant became Marvin's bailee. In a

certain sense it recognized his title and, so to speak, attorned to him. The principle is thus stated in 6 C. J. 1108:

"The more generally accepted rule is that the bailee may not deny the title of the bailor, either by claiming title in himself, or by alleging title in another, subject, however, to the exceptions that the bailee may show as against the claim of the bailor that he has been deprived of the property by process of law, or has yielded possession to one having paramount title, or that he is defending on the title and right and by the authority of a third person."

None of these exceptions is disclosed by the evidence in the case at bar.

6, 7. Although Ed Simmons may have actually delivered the wheat to the warehouse, yet he did so as the agent of Marvin and so acted in derogation and not in performance of the executory contract mentioned. When the sheriff applied to Simmons with the writ of attachment and undertook to attach the wheat it was competent for Simmons as a garnishee to deliver the property to the sheriff: Section 304, L. O. L. The officer, thus having actual custody of the property, could deliver it to the defendant as his own bailee, and the latter, having accepted the same in that capacity as shown by its own warehouse receipts, cannot now say that the delivery, although in fact accomplished by Simmons as the servant of Marvin, amounted to a performance of the previous executory contract. In short, no title passed from Simmons to the defendant. At the utmost all that the latter has in the transaction is a cause of action against Simmons for the breach of his contract to sell the wheat. On the other hand, the plaintiff traces his title to Simmons through Marvin by virtue of the latter's payment of the judgment and the acceptance thereof

by Simmons coupled with Marvin's indorsement of the receipts to the plaintiff.

The judgment of the Circuit Court is affirmed.

Affirmed.