Argued at Pendleton May 6, affirmed July 1, 1924.

## AARON WADE *v.* L. C. JOHNSON.

(227 Pac. 466.)

**Sales—Condition to be Performed by Seller in Preparing Goods for Delivery Precedent to Vesting of Title in Buyer.**

1. Under Sections 8180–8182, 8209, Or. L., as general rule where, by agreement, vendor is to do anything with property for purpose of putting it in deliverable condition, performance of those things is condition precedent to vesting of title in buyer.

**Sales—If Goods to be Delivered at Particular Place by Seller, Title Does not Pass Until Delivery.**

2. Under Sections 8180–8182, 8209, Or. L., if contract of sale requires seller to deliver goods to buyer at particular place, title does not pass until goods are delivered or reach place agreed on.

**Sales—Title to Sheep Purchased Held not to Vest in Purchaser Until Time of Delivery.**

3. Title to sheep, bought and required to be of certain quality, and to be delivered by seller to certain place, *held* not to pass to

---

1. When title does not pass though sale is not expressly conditional, see note in 120 Am. St. Rep. 869.

purchaser until delivery at that place, notwithstanding written agreement entered into was designated as "a contract for delivery of sheep," and recited that the seller had that day "sold."

**Chattel Mortgages—Mortgagor may Convey Only That Interest Which He Possesses.**

4. Mortgagor can convey, by chattel mortgage only that interest which he possesses.

**Chattel Mortgages—May be Given on Property Which Mortgagor is Under Contract to Sell.**

5. A limited or special interest is sufficient to support a chattel mortgage, and mortgage may be made of chattels which the mortgagor is under executory contract to sell to another.

**Bills and Notes—Chattel Mortgages—Pre-existing Indebtedness Sufficient to Support Promissory Note—Chattel Mortgage to Secure Pre-existing Indebtedness Valid.**

6. A pre-existing indebtedness is sufficient consideration to support a promissory note, and chattel mortgage given to secure such indebtedness is valid between parties and as to third parties when not given with intent to hinder and delay creditors.

**Trial—Duty of Court to Instruct as to Legal Effect of Written Contract.**

7. Where contract involved in action was written and not in controversy, it is duty of court under Sections 136, 717, Or. L., to instruct the jury in regard to its legal effect.

From Wallowa: J. W. KNOWLES, Judge.

In Banc.

'AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Daniel Boyd*.

For respondent there was a brief over the name of *Messrs. Burleigh & Burleigh*.

McCOURT, J.—This is an action for money had and received. The controversy arose out of the following facts:

Prior to 1922 Omar Stubblefield purchased 715 breeding ewes from L. C. Johnson and about the

---

6. Precedent debt as good consideration for chattel mortgage, see notes in **Ann. Cas.** 1912C, 79; Ann. Cas. 1917B, 935.

same number from W. E. Jones and combined the two lots of sheep so purchased by him into one band, which he ran on the range in Wallowa County until he sold the same as hereinafter stated. Part only of the purchase price was paid by Stubblefield at the time he acquired the sheep.

Johnson and Jones each held a mortgage or lien upon the sheep sold by him to Stubblefield, and upon the wool and increase therefrom, as security for the unpaid portion of the purchase price of such sheep and for money advanced to Stubblefield to assist him in feeding and caring for the sheep.

In September, 1922, Stubblefield, at the instance of Johnson and Jones, and with their consent agreed to sell the sheep to the Crane Creek Sheep Company of Boise, Idaho. The agreement of sale mentioned was made by telephone and a few days later, in conformity therewith, the Crane Creek Sheep Co., forwarded to the Wallowa National Bank of Enterprise, Oregon, a draft for $3,000, to be placed to the credit of Johnson, Jones, and Stubblefield, together with a written memorandum of the contract for the delivery of the sheep. The writing was executed by Stubblefield on September 27, 1922, and recited the terms of the sale as follows:

"No. 183.   Contract for Delivery of Sheep.

"This is to certify that I have this day sold and will deliver to Crane Creek Sheep Co.. of Boise, Idaho, about 1600 head of Cross Bred ewes, 4 and 5 years old, all sheep to have good sound mouth, price of ewes $8.00 per head.

"Said sheep to be free from scab or other disease, to pass Government inspection at shipping point, to be free from runts and cripples and all incumbrances. And to be delivered in good condition at the stock yards at f. o. b. cars, Enterprise, Oregon, on or

about Oct. 1st, 1922, I have received on this contract as part payment on said sheep the sum of Three Thousand Dollars, balance to be paid at the time of delivery. Made in duplicate and dated at Enterprise, Oregon, 9–27–22.

"(Sd.)    JOHNSON & JONES,
"By OMAR STUBBLEFIELD.

"Witness:
        "T. F. BOYLEN."

After executing the contract for the sale and delivery of the sheep, and on the same day, Stubblefield executed and delivered to plaintiff his promissory note in the usual form, for $2,500.00, payable on or before October 22, 1922, and also executed and delivered to plaintiff as security for the promissory note last mentioned, a chattel mortgage upon all of the sheep described in the above sale contract. The promissory note and chattel mortgage were given to plaintiff by Stubblefield to evidence and secure a past indebtedness, and plaintiff at the time he accepted the note and mortgage knew that Jones held a chattel mortgage covering part of the sheep and that Johnson held a chattel mortgage upon the remainder thereof. Plaintiff also knew that Stubblefield had entered into the aforesaid contract for the sale of the sheep to the Crane Creek Sheep Co.

Subsequent to the execution of the contract for the sale of the sheep and the mortgage given on the same to plaintiff, and before delivery of the sheep to the Crane Creek Sheep Co., the Stock-growers & Farmers' National Bank of Enterprise, Oregon, instituted an action against Stubblefield to recover money owing by the latter to the bank, in which action the bank by attachment proceedings attempted to subject the money that would be due Stubblefield from the sale of the sheep to the payment of its claim. Plain-

tiff, pursuant to the provisions of his chattel mortgage, took possession of the sheep for the purpose of preserving his mortgage lien thereon.

Thereafter in order to permit the sheep to be delivered under the contract of sale, the Stock-growers & Farmers' National Bank, Jones, Johnson and plaintiff, entered into a stipulation and agreement that the sale and delivery of the sheep should be completed and from the money derived therefrom the first liens should be paid and that the proceeds of the sale remaining after payment of such liens, should be deposited in the Wallowa National Bank in the name of Johnson, to be held by him pending a decision as to whether the bank of plaintiff had the superior right thereto, and paid out by Johnson or at his direction to the claimant above named, whose right to the money was determined to be superior. The sheep were delivered pursuant to the foregoing stipulation and agreement.

Jones and Johnson each made a separate settlement with Stubblefield in relation to the sheep that each was interested in. The lien claim of Jones exceeded, or at least equaled the amount of the proceeds from the sale of the sheep which he had formerly owned and all of the money realized upon the sale of those sheep was paid to Jones. In the settlement between Stubblefield and Johnson it was ascertained that there was $967.61 remaining from the proceeds of the sale of the Johnson sheep after Johnson had been fully paid. The latter sum was deposited in the Wallowa National Bank in the name of Johnson in compliance with the stipulation above mentioned. Thereafter the Stock-growers & Farmers' National Bank abandoned its claim to the money

so held by Johnson and recognized that plaintiff had a superior right thereto.

Thereupon without the consent of plaintiff and contrary to his instructions, Johnson in violation of the terms of the stipulation and with full knowledge of plaintiff's second mortgage, authorized the Wallowa National Bank to pay and it did pay to Jones, $653.30 of the money that had been deposited to the credit of Johnson under the aforesaid stipulation. The above mentioned payment to Jones was made upon an alleged indebtedness asserted by Jones against Stubblefield for which indebtedness Jones held no security whatever. Johnson retained and refused to pay over to plaintiff the portion of the money deposited with him and not paid over to Jones, for the purpose of applying the same in payment of other unsecured claims owing by Stubblefield.

Plaintiff then instituted this action. Verdict and judgment were rendered in favor of plaintiff for $967.67, the amount that was deposited to the credit of Johnson in the Wallowa National Bank, pursuant to the stipulation as above stated. Defendant appeals.

At the close of plaintiff's case in chief, defendant interposed a motion for nonsuit as follows:

"Mr. Boyd: We desire to move for a judgment of nonsuit for the reason the testimony in this case conclusively shows that the sheep in question were sold to the Crane Creek Sheep Company of Boise, Idaho, prior to the time of the execution and delivery of the alleged mortgage described in the complaint and at the time of the execution, and delivery of the sheep described in the mortgage to Wade, Omar Stubblefield had parted with all interest in the same and had no mortgageable interest therein, and that for that reason the alleged mortgage to Aaron Wade as set out in the complaint is void."

The court overruled defendant's motion for non-suit and when all the testimony offered by plaintiff and defendant had been submitted, defendant requested the court to direct a verdict in his favor and supported his request by the reasons on which his motion for nonsuit was based. The court denied defendant's request for a directed verdict and in relation to the contention advanced by defendant in his motion for nonsuit, instructed the jury as follows:

"I instruct you that as a matter of law a valid chattel mortgage may be executed upon chattels which the mortgagor is under an executory contract to sell to another when the title has not yet passed and that such mortgage will be a valid lien upon all of the interest of the mortgagor therein, I further instruct you that the contract of sale of the sheep involved in this case, being defendant's exhibit 1, is an executory contract for sale for future delivery, and that under said executory contract of sale the said Omar Stubblefield had a legal right to execute a mortgage on the sheep therein described at any time before delivery of the sheep under said contract and that such mortgage would constitute a valid lien thereon."

Defendant assigns the above mentioned rulings of the court and the foregoing instruction as error.

All of defendant's assignments of error are founded upon the contention that the entire property and interest of Stubblefield in or to the sheep, passed to the Crane Creek Sheep Co., at the time the terms of the sale were agreed upon by telephone or at the latest, when the written memorandum of the contract was signed by Stubblefield. Based upon that contention, defendant deduces the conclusion that Stubblefield possessed no interest or title in the sheep transferable to plaintiff by chattel mortgage at the time

he executed the chattel mortgage to plaintiff, and for that reason the latter obtained nothing by that chattel mortgage. The decision of the questions thus presented involves a construction of the contract evidenced by the writing above set forth.

Before examining the terms of the contract, reference will be had to some of the rules of interpretation that have been adopted by the courts as a guide to the construction of such contracts, where, as in the instant case, the time at which the property passes to the buyer is not expressly stated in the contract.

1. In *Hamilton & Rourke* v. *D. Gordon,* 22 Or. 557 (30 Pac. 495), this court, discussing the rules for ascertaining the intention of the parties as to the time at which the property in goods is to pass where there is a contract to sell specific or ascertained goods, said:

"Whether an agreement concerning the sale and delivery of goods, in the absence of a delivery, is to be treated as an executed or an executory contract, and whether the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded, or remains the property of the vendor until the contract is fully executed, is often a difficult and embarrassing question, and the books are replete with the discussion of the various aspects of the question. As between the parties, it is generally considered a question of intention; and it may often happen that the parties have expressed their intention in a manner that leaves no room for doubt; where, however, they have not done so in express terms, the intention must be collected from the agreement, and the courts have adopted certain rules for that purpose. As a general rule, where, by the agreement, the vendor is to do anything with the property for the purpose of putting it into a deliverable condition, or into that state in

which the purchaser is bound to accept it, the performance of these things, in the absence of circumstances showing a contrary intention, is taken to be a condition precedent to the vesting of the property in the buyer; * * . (Benj. Sales, § 318; *Hubler* v. *Gaston*, 9 Or. 66 [42 Am. Rep. 794]; *Rosenthal Bros.* v. *Kahn Bros.*, 19 Or. 571; * * .)"

The doctrine above stated has been followed and applied by this court in the following cases: *Wadhams* v. *Balfour*, 32 Or. 313, 318 (51 Pac. 642); *State* v. *Childers*, 71 Or. 340, 343 (142 Pac. 333); *Davidhizar* v. *Elgin Forwarding Co.*, 89 Or. 89, 94 (173 Pac. 893).

2. Upon a theory analogous to that supporting the general rule that when some act remains to be done by the seller for the purpose of putting the subject of the sale into a deliverable condition, the property does not pass until such act is performed, it is likewise held that if the contract to sell requires the seller to deliver the goods to the buyer or at a particular place, the property does not pass until the goods have been delivered to the buyer or have reached the place agreed upon: Williston on Sales (2 ed.), § 280. The latter rule applies to and governs those contracts to sell, commonly known as f. o. b. contracts, whereby the seller is bound to put the goods, free of expense, on board railroad cars for transportation to the buyer: Williston on Sales (2 ed.), § 280b; *Dentzel* v. *Island Park Assn.*, 229 Pa. 403 (78 Atl. 935, 33 L. R. A. (N. S.) 54, and note). In the section of Williston on Sales last cited, the author says:

"As it is a necessary implication in f o. b. contracts, that the buyer is to be at his own expense in regard to the goods after the time when they are delivered free on board, the presumption follows that

the property passes to the buyer at that time and not before, though the goods are brought to the place of shipment and are ready for loading, and the further presumption follows that the place where the goods are to be delivered f. o. b. is the place where the goods are to be delivered to the buyer. The general rule, however, must be qualified by two possibilities; the first relating to the form of the bill of lading and the second to the other terms of the contract."

The rules of construction above stated and explained are embodied in §§ 8180, 8181, 8182 and 8209, Or. L.; the sections of the Code correspond to §§ 17, 18, 19 and 46 of the Uniform Sales Act enacted by the Legislative Assembly, Laws of 1919, Chapter 91.

The subject of the sale was all of the cross-bred ewes, four and five years old, with sound mouth (about 1600 head), included in the band of sheep in the possession of Stubblefield. Runts and cripples, and sheep infected with scab or other diseases, or having unsound mouths, were not included in the sale. The contract required the sheep to pass government inspection at shipping point and that Stubblefield should deliver them in good condition at the stockyards, f. o. b. cars at Enterprise, Oregon, and provided that the balance of the purchase price would be paid by the buyer at the time of such delivery.

Thus the terms of the contract made delivery of the sheep and payment of the purchase price concurrent conditions. Stubblefield was required to select or separate from his band the ewes which were to be delivered under the terms of the contract and in order to carry out his bargain, the duty was imposed upon him to transport the sheep so selected, from the range or feeding grounds to the stockyards at Enterprise, Oregon, and there submit them to Govern-

ment inspection, and then load them into railroad cars, all free of expense to Crane Creek Sheep Co.

3. Delivery was complete, when the sheep were loaded upon the cars at Enterprise, Oregon, by Stubblefield, free of expense to the Crane Creek Sheep Co. Prior to that time no duty or obligation in respect to the sheep was imposed upon the Crane Creek Sheep Co., by the terms of the contract. Interpreted by the above rules of construction, property in the sheep passed to the Crane Creek Sheep Co., at the time they were delivered free on board the cars, and not before. That conclusion is not affected by the use of the word "sold" in the first part of the contract, nor by the fact that the writing is designated a "contract for the delivery of sheep." *Hubler* v. *Gaston & Furry,* 9 Or. 66, 72 (42 Am. Rep. 794).

4, 5. Subject to his obligations under the contract, Stubblefield after signing the same and until delivery on board the railroad cars, retained identically the interest and title in the sheep that he possessed before executing the contract. While a mortgagor can convey by chattel mortgage only that interest which he possesses, it is well established that a limited or special interest is sufficient to support such a mortgage, and that a valid chattel mortgage may be made of chattels which the mortgagor is under an executory contract to sell to another, when title has not yet passed: 11 C. J. 429; Jones on Chattel Mortgages, 5 ed., §§ 114, 118; Cobbey on Chattel Mortgages, § 189.

6. A pre-existing indebtedness is a sufficient consideration for a promissory note (*American National Bank* v. *Kerley,* 109 Or. 155 (220 Pac. 116, 130, 32 A. L. R. 262), and a chattel mortgage given to secure such an indebtedness is valid between the parties, and

also as to third parties, when not given and received with intent to hinder and delay creditors: 5 R. C. L. 420; *Currie* v. *Bowman*, 25 Or. 364 (35 Pac. 848). No question of fraud is present in the instant case.

Manifestly, neither the denial of defendant's motion for a nonsuit nor the refusal of the court to direct a verdict for defendant was error.

7. As the contract for the sale of the sheep was evidenced by a writing about which there was no controversy, it was the duty of the trial court to instruct the jury as to its legal effect: Sections 136, 717, Or. L., and cases cited thereunder. The court discharged that duty in strict conformity to the rules of construction and the legal principles above discussed.

It follows that the judgment of the Circuit Court should be affirmed, and it is so ordered.

AFFIRMED.

Mr. Justice COSHOW, J., did not participate in the hearing or decision of this case.