Argued May 18, reversed June 2, 1960

# RAYLO LUMBER COMPANY *v.* OREGON PACIFIC LUMBER CO.

### 352 P. 2d 749

*Justin N. Reinhardt* argued the cause for appellant. With him on the briefs were Reinhardt & Coblens and Morton A. Winkel, Portland.

*Samuel B. Weinstein,* Portland, argued the cause for respondent. With him on the brief was Moe M. Tonkon, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Holman, Justices.

HOLMAN, J. (Pro Tempore)

Plaintiff, Raylo Lumber Company, brought this action against defendant, Oregon Pacific Lumber Company, for the recovery of the price of a carload of lumber. For the purpose of clarity, this opinion will hereafter refer to the plaintiff, Raylo Lumber Company, as Seller and the defendant, Oregon Pacific Lumber Company, as Buyer.

At its mill in Fortuna, California, Seller received from Buyer a written order for lumber sent from Buyer's place of business in Portland, Oregon. The pertinent parts of the written order were as follows:

"TO Raylo Lbr. Co. Box 575 Fortunia [sic], Calif. SHIP TO Oregon-Pacific Lumber Co. Council Bluffs, Iowa RATE 1.20 (SHOW ON BILL OF LADING) ROUTING SP UP (via Colby, Kansas) SHIPMENT One week TERMS: REGULAR 2% ADF 10 days Please SHOW OREGON-PACIFIC LUMBER CO. AS SHIPPER * * * THOROUGHLY AIR DRIED WHITE FIR—WCLA RULES #15 Constr. & Btr., Allow. 25% standard ALS S4S EE DET—Clean Bright Stock THREE (3) CARLOADS—Approx. 28/30M each. 2 X 4 R/L 70% 16' 60.00 24.00 84.00"

Seller successfully shipped two carloads about which there is no controversy. The loading of the

third car on the siding at Seller's place of business was completed before noon on a particular day and the car was sealed. In the afternoon Seller prepared an invoice to Buyer for the lumber in the car, billing Buyer as follows:

"SHIPPED TO OREGON-PACIFIC LUMBER COMPANY COUNCIL BLUFFS, IOWA * * * F.O.B. DELIVERED $1.20 RATE. * * * 31,152′ WHITE FIR, A. D., 2x4, STD. & BTR., S4S, [at] $84.00 PER M—$2,616.77"

Seller also prepared a straight bill of lading naming Buyer both consignor and consignee as instructed, and around 5 o'clock in the afternoon presented it to the railroad at its nearest station at Alton, California, which was some distance from Seller's place of business. The railroad agent signed the bill of lading and Seller immediately deposited both it and the invoice in the mail to Buyer. Before Buyer received the bill of lading and before the carrier took the car from Seller's siding, fire broke out and the lumber was damaged. The fire was not shown to have been the fault of either party. The damaged lumber was sold with the consent of the parties without prejudice to their rights and the proceeds applied toward the purchase price. This action was brought for the balance. The trial judge tried the case without a jury, and entered findings of fact to the effect that Seller sold and delivered the lumber to Buyer and that the damage to the lumber occurred after the delivery of the lumber to Buyer in accordance with the terms of the agreement. Judgment was rendered for Seller and Buyer appeals.

The rules governing who should sustain the loss in a situation such as this are, of course, those set

forth in the Uniform Sales Act which has been adopted by this state. Unless otherwise agreed, risk of loss follows the title to the property in question as the result of ORS 75.220 (Uniform Sales Act § 22), which is as follows:

> "Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer, the goods are at the buyer's risk whether delivery has been made or not, *  *  *"

Unless a contrary intention appears, the rules for ascertaining the intention of the parties as to the time title passes are set out in ORS 75.190 (Uniform Sales Act § 19). The pertinent parts of this section are as follows:

> "Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:
> "*  *  *  *  *
> "Rule 4. (1) Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, *  *  * the property in the goods thereupon passes to the buyer. *  *  *
> "(2) Where, in pursuance of a contract to sell, the seller delivers the goods to *  *  * a carrier *  *  * for the purpose of transmission to *  *  * the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the cases provided for in the next rule *  *  *
> "Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place,

the property does not pass until the goods have been delivered to the buyer or have reached the place agreed upon."

From the above, it is apparent that where there is a contract to sell unascertained or future goods by description, as was the case here, title passes when the goods are put in a deliverable state and unconditionally appropriated to the contract (Rule 4 (1)). Where the Seller delivers the goods to a carrier for delivery to the Buyer, they are presumed to have been unconditionally appropriated to the contract (Rule 4 (2)), except that if the contract requires delivery by the Seller to a particular place or to pay the cost of transportation, title does not pass until the goods have reached the place agreed upon (Rule 5).

Seller claims that the rules set forth under ORS 75.190 do not apply, as by its provisions they are only applicable where no different intention appears; that this is a law case and the trial judge sitting as a jury, by making a finding that there was a sale and a delivery, found that a different intention did appear; that there is sufficient evidence in the record to support the findings and, therefore, they cannot be disturbed.

The question of intention is one of fact. However, if the whole contract of the parties is reduced to writing, or if the facts are so clear as to justify but one conclusion, and generally, if the facts are undisputed from which intention can be determined, the question is determined by the court. See 2 Williston, Sales (rev ed), p 10, § 262. In this case, everything was in writing and there are no disputes as to the circumstances involved. This was a determination for the court as such and not one made by the court sitting as a jury.

The findings of the trial court that the lumber was sold, which imputes passage of title, and that there was a delivery is made in the face of Seller's invoice to Buyer which specifies the price as being "F.O.B. DELIVERED." This required Buyer to pay $84 per thousand for lumber delivered by Seller in Council Bluffs, Iowa. It imputes the passage of title at Council Bluffs and that Seller will pay the freight to that point. The term "F.O.B." has become recognized as having certain definite commercial and legal significance. A text written by Thomas G. Bugan entitled "When Does Title Pass From Shipper to Consignee And Who Has Risk of Loss or Damage in Transportation" (1951) has this to say about the term of "F.O.B.":

"This term has a certain legal significance of which the courts take judicial notice."

After an examination of various judicial and text writers' definitions of the meaning of the term, he states as follows:

"The implication from the above definitions is, that the phrase F.O.B. will ordinarily determine the place where delivery is required and where the title will pass. Likewise, it will usually determine whether the seller or the buyer is to pay the transportation charges."

While recognizing that it may be varied by other terms of the contract, the Oregon court has recognized the usual significance given the usage of the designation "F.O.B." in the case of *Wade v. Johnson,* 111 Or 468, 477, 227 P 466.

In his chapter entitled "F.O.B. Destination," which we take to be synonymous with the term "F.O.B. Delivered," Mr. Bugan discusses the intention of the parties regarding transfer of title as it affects the

usage of the term "F.O.B." and comes to the following conclusion:

> "The intent of the parties is the controlling element fixing the time and place of passage of title and risk.
>
> "However, in the absence of a definite agreement as to time and place of passage of title, the Uniform Sales Act (or the principles of the common law where the Act does not apply) will prevail to determine the intent. If the words "f.o.b." are employed, they are especially important in solving the intent of the parties, for they have a definite commercial and legal significance of which the courts will take judicial notice."

The meaning of the use of the term has become so well ingrained in commercial and legal parlance that a contrary intention to its usual meaning must be demonstrated with a high degree of probability. The evidence here does not demonstrate such a probability and, therefore, there is no basis upon which to rest the trial court's findings of a sale and delivery.

Seller particularly contends that Buyer's instructions to Seller to ship the lumber showing Buyer as the shipper, shows a sufficient contrary intent. This is overcome, in our opinion, when coupled with an agreement for goods "F.O.B. Delivered." It could also just as logically be claimed that the instruction was for the purpose of not disclosing the identity of Buyer's supplier and customer to each other so they might deal directly without the necessity of a middle man.

The evidence not being sufficient to show a different intent as to the time of the passage of title, Rule 5 of ORS 75.190 is applicable. The Seller having undertaken to deliver the goods to Council Bluffs,

Iowa, at the flat price of $84 per thousand and to pay the freight to that point, the property in the lumber had not passed at the time of the fire and risk of loss by virtue of ORS 75.220 was on the Seller.

The judgment of the lower court is reversed.