JOHN F. McCOY v. JOSEPH LASSITER.

*Chattel Mortgage—Pledge—Delivery—Registration.*

1. The distinction between a pledge and a mortgage of personal property is, (1) that in the former the *title* is retained by the pledgor, while in the latter, it passes to the mortgagee, and (2) that, the delivery of the possession of the property to the pledgee, is absolutely essential to a pledge, while, *between the parties, but not against creditors or purchasers,* such delivery is not necessary to the validity of mortgage.

2. At common law, delivery and retention of the custody of the property, was necessary to the validity of a mortgage, as against creditors and purchasers, but now, by statute, registration is substituted therefor.

McCoy *v.* Lassiter.

3. A mortgage of chattels, in parol, is good, between the parties. No particular form of words is necessary to the constitution of such a mortgage. It is sufficient if it appear that the parties intended it to operate as such.

This was an action for the recovery of a horse, and damages, tried before *Avery, Judge,* at the Fall Term, 1885, of Lenoir Superior Court.

The plaintiff alleged that he was the owner, and entitled to the possession of the horse, of which he had been wrongfully deprived by the defendant.

The defendant denied these allegations.

The plaintiff testified that the horse was his property, and had been taken unlawfully from his possession, by the defendant Lassiter; that the defendant had signed a claim and delivery bond, as his surety, in an action brought by him against one Carman; that nothing was said by him or Lassiter about delivering the horse in controversy to defendant, when he signed the bond for him, and the horse was not then in his (Lassiter's) stable.

Lassiter testified that the plaintiff applied to him to become his surety on a claim and delivery bond, and at the time, having his horse in his stable to be fed, the plaintiff said to him, "you take this horse (pointing to the horse in controversy), and keep him till the suit is decided"; that he did not, at that time, agree to become surety, but they went to the store of Stanly, about one hundred yards off, and there he and Stanly signed the bond, and he then loaned the horse to the plaintiff, and he might have said, he loaned him to plaintiff until the suit was decided.

Stanly testified, that plaintiff and defendant came into his store, and plaintiff said he wanted him and Lassiter to sign his bond, and *he would turn over the horse in controversy,* and if the suit should go against him, and his sureties have the costs to pay, that he and Lassiter could sell the horse and pay it; that they thereupon signed the bond, and after it was signed, Lassiter said to plaintiff, "we will loan you this horse."

Carman testified to the same effect. He stated, that plaintiff asked Lassiter to go on his bond; Lassiter said, "I don't want to go on any body's bond unless I am secured." McCoy said, "I will pawn my horse and buggy;" the horse was then in the stable. Lassiter then went up to Stanly's store and said to Stanly that plaintiff proposed to pawn his horse and buggy. Stanly said "all right," and they signed the bond; afterwards Lassiter turned around and said to plaintiff, as they went out, "that he would loan him the horse."

The Court instructed the jury:

1. That it appeared from the testimony, that the title to the horse was in the plaintiff, when the defendant and Lassiter signed the bond, in the case of McCoy *v.* Carman.

2. That in no view of the testimony, could the jury find that the horse was put in pledge to Lassiter, or that the legal title passed from McCoy to Lassiter, and the jury must find the first issue in favor of plaintiff. Defendant excepted. Verdict and judgment for plaintiff, and defendant appealed.

*Mr. W. R. Allen,* for the plaintiff.
*Mr. Geo. Rountree,* for the defendant.

Ashe, J. (after stating the case). We think it is manifest from the testimony in the case, that the plaintiff intended to give to the defendant Lassiter and Stanly, the sureties on his bond, a lien on the horse in controversy. And it is equally manifest, that Lassiter supposed that he was secured by the transaction.

The evidence in the case was entirely sufficient to establish an agreement between the parties, that the defendant should have a lien on the horse, for his indemnification as plaintiff's surety; for the plaintiff, in the first instance, while the horse was in defendant's stable, made the proposition to Lassiter to sign the bond, as his surety. "You take the horse (pointing to the horse in controversy) and keep him until the suit is decided." Then, at Stanly's store, the plaintiff renewed the proposition, by saying,

"he wanted the defendant and Lassiter to sign his bond, and he would turn over the horse, and if the suit should go against him, and his sureties had the costs to pay, that defendant and Stanly could sell the horse and pay it." Stanly and the defendant did sign the bond, and their doing so, was an acceptance of the plaintiff's proposition, and was as binding between the parties as if it had been agreed upon by them, in express terms. But what was the nature of the agreement? It was, that the defendant and Stanly should have a lien upon the horse, to secure their indemnity. There can be no question about that. But what kind of lien? It must have been either a pledge or mortgage. If a pledge, a delivery of the property into the possession of the pledgee was absolutely essential—Schouler on Personal Property, 513—but not so with a mortgage of chattels.

At common law, a parol mortgage of personal property was good *inter parties*, even without delivery of possession of the property.

To give a chattel mortgage validity at common law against creditors and purchasers, it was essential that the custody and possession of the goods should be delivered to, and retained by, the mortgagee, but *as between the parties*, delivery and possession, while essential to constitute a pledge, are not necessary to the validity of a mortgage. In this respect the common law rule has not been changed by statute. Jones on Chattel Mortgages, § 176.

The intent of the statute requiring registration, was to do away with the necessity of delivery, and enable mortgagors to hold possession until default.

For this purpose, registration is required, as giving greater notoriety than delivery and retention of possession. Registration was intended as a substitute for delivery. *Ibid.*

Whether this transaction was a mortgage or a pledge, must depend upon the intention of the parties, as to whether it was intended that the title to the horse should be retained by the plaintiff or passed to the defendant, for that is the main distinction between a mortgage and pledge, and it was a question of fact to be determined by the jury, which virtually resolved itself into the question, whether it was a mortgage or pledge.

If the jury should have come to the conclusion that it was intended to be a pledge, then, whether it was a valid pledge, would depend upon the further fact, whether the horse was in the possession of the defendant when the bond was given, and the agreement became complete.

The plaintiff stated that the horse was not in the stable when the bond was signed, but the circumstances of the transaction tend to a different conclusion.

His Honor then should have left the matter to the jury, with instructions as to what was a mortgage and what a pledge, and if they believed that the transaction was intended by the parties to be a pledge, they should then inquire, whether the horse was in the stable of the defendant when the bond was signed, and if there, in that view of the case, they should find in favor of the defendant, but if not, then they should find for the plaintiff. But if they should be of the opinion, that it was the intention of the parties, by this agreement, that the title of the horse should pass to the defendant, to be held by him as a security for his indemnity as surety on the bond, then the contract was a mortgage, and it was immaterial whether the horse was in the stable of the defendant at the time the bond was signed, and they should find for the defendant.

To constitute a mortgage, no particular words are necessary. "If a security for money is intended, that security is a mortgage, though not having on its face the form of a mortgage; it is the essence of a mortgage that it is a security." Jones on Chattel Mortgages, §24.

"We give a lien on the horse, Charley, to have and to hold until the debt is paid," has been held in Alabama, to be a mortgage. *Ellington* v. *Charleston*, 51 Ala., 116. So the words, "I hereby pledge and give a lien," *Langdon* v. *Bull*, 9 Wend., 80. So, also, the words, "turned out and delivered to A, one white and red cow, which he may dispose of in fourteen days, to satisfy an execution," *Atwater* v. *Mann*, 10 Vt. And in addition to these authorities, "a Court of Equity

will recognize and sustain a contract, creating a *lien* upon property, as a mortgage, whenever it appears from the contract the parties intended it to operate as such." Jones on Chattel Mortgages, §12.

Error.                                                                Reversed.