A. T. CASTELLOE v. JAMES JENKINS, W. S. MONTGOMERY, W. J. BURDEN, C. T. WHITE, AULANDER BUILDING AND HARDWARE COMPANY, AND J. E. COOKE, TRUSTEE.

(Filed 3 October, 1923.)

**1. Corporations—Shares of Stock—Transfer of Shares—Liens.**

While the constitution or by-laws of a corporation may make its shares of stock transferable on the books of the company, the written assignment thereto on the certificate by the owner of his shares, accompanied by delivery, is sufficient as between the parties to pass the full title thereof to the transferee, and the mere delivery, without such written assignment, at least an equitable title thereto.

**2. Same—Transfer in Blank—Principal and Agent.**

Where the owner of shares of stock in a corporation signs a blank space thereon left for the transfer thereof, with written power of attorney left also in blank, accompanied by delivery, the transferee is *prima facie* presumed to be the owner of the shares, with right to have them transferred on the books of the corporation.

**3. Same—Title.**

The *prima facie* title to shares of stock in a corporation of one to whom the owner has transferred them, accompanied with delivery, is superior to that of a pledgee thereof, under the terms of a written agreement executed before any shares had been issued by the corporation, when the transferee has acquired them without notice of the pledgee's claim. As to whether the pledgee's agreement was technically a mortgage, or an executory contract for delivering the shares when issued, or that the pledgor should hold for the pledgee's benefit, was not necessary to be decided.

**4. Same—Delivery of Shares.**

The principle relating to constructive or symbolic delivery of the possession of personal property has no application to a pledge of shares of stock in a corporation under a written agreement made before the corporation had issued its shares, as against a transferee to whom they had been made, without notice of the pledgee's claim.

**5. Same—Burden of Proof.**

The burden of proof is on the plaintiff, claiming as pledgee of shares of stock in a corporation, under a written agreement with the owner, executed before the corporation had issued any, to show priority over the title of one who had acquired as a transferee.

**6. Verdict—Interpretation.**

The verdict of the jury should be considered on appeal, in the light of the evidence and the charge of the court.

APPEAL from *Daniels, J.,* at April Term, 1923, of BERTIE.

Civil action. In 1919 the defendants Jenkins, Montgomery, Burden, and White, desiring to engage in business, organized the Aulander Building and Hardware Company as a corporation, and subscribed each to twenty-five shares of the capital stock. The stock was paid, and on 2 January, 1920, the corporation issued this receipt to the defendant Jenkins: "Received of James Jenkins twenty-five hundred dollars in full for his twenty-five shares in Aulander Building and Hardware Company. This 2 January, 1920. Aulander Building and Hardware Company, by James Jenkins, President. By W. J. Burden, Secretary-Treasurer."

Certificates of stock were not issued until 15 May, 1920.

The plaintiff alleged that on or about 19 February, 1920, the defendant Jenkins applied to him for a loan of $1,800, and that he executed and delivered to Jenkins two notes—one for $1,000 and the other for $800—payable ten months after date, and that Jenkins thereafter assigned these notes, on which the plaintiff was liable, to the Peoples Bank of Murfreesboro. The plaintiff afterwards paid the notes, principal and interest.

When the plaintiff executed these notes, Jenkins signed and delivered to the plaintiff, as security for the loan, the following instrument, marked "Exhibit A":

This is to certify that, whereas A. T. Castelloe has this day (19 February, 1920) given me his promissory notes—one for the sum of one thousand dollars and the other for eight hundred dollars—each made payable to my order, and due ten months from date of this paper:

Now, therefore, I do hereby promise to pay the said notes at maturity, without costs or detriment to said A. T. Castelloe, for the said notes are given to me without value, being only accommodation paper lent to me. And to secure the payment of said notes at maturity, I do hereby assign to said A. T. Castelloe the twenty-five shares of stock I now own in Aulander Building and Hardware Company, and I will transfer the stock to said Castelloe as soon as the same is issued.

Witness my hand and seal, this day and year above written.

JAMES JENKINS.     [Seal]

It was alleged also that Jenkins was the president of the Aulander Building and Hardware Company, and that immediately after the foregoing paper was executed, the plaintiff notified the company that he held said stock to secure his debt; that Jenkins, with knowledge of the plaintiff's rights, fraudulently transferred his shares to Montgomery, who took them with full notice of the plaintiff's equities; that Jenkins and Montgomery fraudulently procured the issuance of a certificate of stock by the company to Jenkins, and later a transfer of the certificate to Montgomery; and that Burden and White purchased from Montgomery, with notice of plaintiff's equities, and placed the certificate in the possession of the defendant J. E. Cooke, trustee (with power of sale), to secure a part of the purchase price, and that Cooke and Montgomery are preparing to sell the stock and apply the proceeds to the amount claimed to be due Montgomery.

Answers were filed, denying the material allegations of the complaint, and the following issues were submitted and answered:

"1. Is the defendant James Jenkins indebted to the plaintiff in the sum of $1,800, with interest from 19 February, 1920? Answer: 'Yes.'

"2. Was the twenty-five shares of stock described in the complaint pledged with the plaintiff by the said defendant to secure the payment of the said indebtedness of $1,800 and interest from 19 February, 1920, as alleged in the complaint? Answer: 'Yes.'

"3. Was the plaintiff the owner as pledgee of the said certificate of the twenty-five shares of stock in the said Aulander Building and Hardware Company? Answer: 'Yes.'

"4. Did the defendant W. S. Montgomery purchase and receive the said shares of stock from the defendant James Jenkins with notice of the prior claim of the plaintiff? Answer: 'No.'

"5. Did the defendant W. S. Montgomery, with notice of the prior lien and claim of the plaintiff on the said twenty-five shares of stock, wrongfully and fraudulently convert and cause the defendant James Jenkins and the said Aulander Building and Hardware Company to wrongfully convert the same, and issue the said stock and deliver the same to him, with the intent and purpose of depriving the plaintiff of his rights and pledge therein? Answer: 'No.'

"6. What was the value of the said twenty-five shares of stock at the time it was transferred by the defendant James Jenkins to the defendant W. S. Montgomery? Answer: '$1,800.'

"7. Did the defendants C. T. White and W. J. Burden afterwards purchase the said shares of stock from the said W. S. Montgomery with notice of plaintiff's lien and pledge thereon? Answer: 'Yes.'

"8. Did the defendant Aulander Building and Hardware Company wrongfully issue and deliver the certificate for the said shares of stock to the defendant Jenkins, with knowledge of the plaintiff's lien and pledge thereon? Answer: 'Yes.'

"9. Did the defendants James Jenkins, W. S. Montgomery, C. T. White, W. J. Burden, and Aulander Building and Hardware Company, with the wrongful and fraudulent intent and purpose of depriving the plaintiff of his rights as pledgee of said stock, cause the said certificate of stock to be issued to the said James Jenkins, and afterwards transferred to W. S. Montgomery and afterwards transferred to C. T. White and W. J. Burden, as alleged in the complaint? Answer: 'No.'

"10. Has the plaintiff released his claim to own said stock? Answer: 'No.' "

Judgment was rendered in favor of the plaintiff against Jenkins and the Aulander Building and Hardware Company for $1,800, with interest from 15 May, 1920, and in favor of the other defendants. The judgment recites these admissions for the purpose of the trial: the assignment of the stock to Castelloe by the paper-writing in evidence was made 19 February, 1920, and on the same day notice thereof was given to the corporation; the assignment to Montgomery was made 7 April, 1920; the stock (certificate) was issued to Jenkins 15 May, 1920; the plaintiff took no further steps to get possession of the stock, and Montgomery received the certificate of stock on 15 May, 1920, and had the transfer entered on the books of the corporation. The plaintiff appealed.

*Gillam & Davenport and Murray Allen for plaintiff.*
*Winston & Matthews for W. S. Montgomery.*

ADAMS, J., after stating the facts: The verdict and the admissions of the defendants appearing in the judgment and the evidence establish these facts: The Aulander Building and Hardware Company was organized as a corporation in December, 1919, and the first meeting of the stockholders was held on 1 January, 1920, in which Jenkins was elected president; Burden, secretary and treasurer; White, vice president and assistant secretary and treasurer; and Montgomery, general manager. These four owned all the stock. When they paid their subscription they took a receipt from the company, showing the number of shares to be issued to each subscriber. Certificates of stock were not issued, however, until 15 May. On 19 February, 1920, the defendant Jenkins became indebted to the plaintiff in the sum of $1,800, and on that day pledged with the plaintiff twenty-five shares of stock in the corporation to secure this indebtedness, and the plaintiff thereby became the owner of such stock as pledgee. On 7 April, 1920, Jenkins assigned the same stock to Montgomery. On 15 May, 1920, the company, with knowledge of the plaintiff's lien, wrongfully issued the certificate of stock to Jenkins, who immediately endorsed and transferred it to Montgomery and caused the transfer to be entered on the company's books.

The appeal presents for decision the question of priority of claims to the stock formerly held by the defendant Jenkins, the plaintiff contending that, as pledgee, he has the preferred ownership, the defendant Montgomery contending that, as holder of the certificate of stock, he has the entire legal and equitable title. These contentions may be resolved by determining the legal relation existing with respect to the stock between the parties principally concerned, namely, the plaintiff, Montgomery, Jenkins, and the corporation. For this purpose we will first examine Montgomery's alleged title to the stock, and then ascertain in what way and to what extent, if any, it is affected by the plaintiff's pledge.

What, then, are the nature and status of Montgomery's interest in the stock represented by the certificate which he holds? While certificates of stock are the symbol of the stockholders' incorporeal right and are not the stock itself, they constitute *prima facie* evidence of ownership as to the number of shares they represent, and, in fact, are regarded such peculiar evidence that a written assignment of such certificates will ordinarily transfer the whole title, and a mere delivery thereof at least an equitable title. 4 Thompson on Corporations (2d Ed.), sec. 4203; *Meisenheimer v. Alexander*, 162 N. C., 235. Strictly speaking, such certificates are not negotiable in the sense of the law merchant, but as they are framed in a way to invite the confidence of business men, they are dealt with as transferable by delivery, when properly endorsed, and

are often used as collateral security in commercial transactions. "It is a well-known fact that stock certificates frequently circulate in places far remote from the home of the corporation by which they were issued; that in all commercial centers they are commonly transferred from hand to hand, like negotiable paper, and that they are hypothecated for temporary loans by a simple endorsement and delivery thereof, the latter being perhaps the most common use to which such securities are put. In the great majority of cases, when stock is merely pledged for a loan, no record of the transfer is made on the books of the corporation, and, in the judgment of laymen, the making of such a record seems to be a needless formality. The trend of modern decisions has been to encourage the free circulation of stock certificates in the mode last indicated, on the theory that they are a valuable aid to modern transactions." 4 Thompson Corp., sec. 3481; *Knox v. Eden Musee Co.*, 148 N. Y., 441; *Bank v. Lanier*, 11 Wall (U. S.), 369; *Weniger v. Success M. Co.*, 227 Fed., 548; *Bank v. Dew*, 175 N. C., 89.

For this reason, as suggested by *Justice Walker* in the case last cited, there is a growing disposition of the courts to allow certificates of stock the advantages of commercial paper, and to this end the methods of transfer have been somewhat relaxed. Hence, Thompson says: "The usual and perhaps the more generally employed method of transfering shares of stock is by the delivery of the certificate, with the assignment endorsed thereon, duly signed by the person named in such certificate. This is sufficient ordinarily to transfer the title of the original holder to the assignee. In other words, corporate stock is transferred as to the parties thereto by endorsement and delivery of the certificates. It is a good assignment of shares of stock to deliver the stock thereof, with a blank transfer on the back, to which the holder has affixed his name; and the party to whom it is delivered is authorized to fill such blank endorsement. It has been said that the possession of certificates, with a power to transfer them, was *prima facie* evidence of title; and where the possessor is given value, his title cannot be impeached, either by subsequent purchasers who did not receive the certificate, or by creditors of the transferrer. A transfer of stock by the delivery of the certificate, endorsed in blank, or with power of attorney, is sufficient to pass title without registry on the corporate books; and the purchaser is authorized to fill up the blank by inserting his own name, or it may be filled with the name of any remote transferee. A certificate of stock, with power of attorney to transfer, duly executed in blank as to the date and the name of the transferee, authorizes the holder to complete a sale by delivery of the certificate and transfer of the stock. The holder of a certificate of stock on which is a printed assignment and power of attorney to make the transfer, signed by the owner, is presumed to be

rightfully in possession thereof, and is *prima facie* authorized to fill in the blank assignment and cause a transfer to be made to himself on the books of the corporation." Corporations, Vol. 4, sec. 4317. And in section 4320: "The passing of the title to stock by a mere delivery of the certificate is governed by the same principle that has been frequently applied to notes, bonds, certificates of deposit, life insurance policies, and ordinary written contracts generally. And on this theory it has been held that a stockholder may transfer to another a complete equitable title to his stock by mere delivery of the certificate, without complying with the forms required by the corporation. To this principle the Supreme Court of Pennsylvania said: 'Why may not a delivery of the certificates, coupled with words of absolute and present gift, invest the donee with an equitable title to the stock, which the donor or a volunteer cannot successfully assail? A stockholder may clothe another with the complete equitable title to his stock without compliance with the forms by the corporation.' An assignment of a certificate of stock upon a valid consideration may be made by mere delivery; an endorsement or instrument in writing is not necessary to pass the title." In *Havens v. Bank,* 132 N. C., 223, *Walker, J.,* cites with approval *McNeill v. Bank,* 46 N. Y., 325, in which it is said: "It has also been settled by repeated adjudications that, as between the parties, the delivery of the certificate with assignment and power endorsed passes the entire title, legal and equitable, in the shares, notwithstanding that by the terms of the charter or by-laws of the corporation the stock is declared to be transferable only on its books; that such provisions are intended solely for the protection of the corporation, and can be waived or asserted at its pleasure, and that no effect is given to them, except for the protection of the corporation; that they do not incapacitate the shareholder from parting with his interest, and that his assignment, not on the books, passes the entire legal title to the stock, subject only to such liens or claims as the corporation may have upon it, and excepting the right of voting at elections." *Cox v. Dowd,* 133 N. C., 537; *Bleakley v. Candler,* 169 N. C., 21; *Bank v. Dew, supra.*

Under these conditions it was not necessary to transfer the stock on the company's books. Although shares of stock are personal property and are transferable on the books of the corporation as provided by the by-laws (C. S., sec. 1164), such provision, it is held, can be of no practical benefit to those not connected with the corporation, because they have "no means of knowing whether the transfer has been made or not." *Bleakley v. Candler, supra.*

From these authorities, especially when considered in connection with the verdict, we deduce the conclusion that Montgomery's certificate is

at least *prima facie* evidence of his title to the stock formerly held and afterwards endorsed and transferred by the defendant Jenkins.

We are next to decide whether such title is subordinate to or in any way affected by the written agreement made by the plaintiff and Jenkins on 19 February, 1920. It will be observed in this connection that, although the answers to the second and third issues show the stock in question had been pledged to the plaintiff and he was the owner thereof as pledgee, the plaintiff testified that Jenkins executed "the written assignment" referred to as "Exhibit A" for the purpose of securing the loan; that it had never been registered or transferred on the books of the company, and that no certificate of stock had then been issued. This written assignment embodies the entire contract entered into by the plaintiff and Jenkins at the time the loan was made, and in these circumstances the verdict should be construed in the light of the evidence and the charge of the court. *S. v. Snipes,* 185 N. C., 747, and cases cited; *Moore v. Trust Company,* 178 N. C., 126. When so construed, the verdict presents the specific question whether the holder's written assignment as security for debt of shares of stock in a corporation for which no certificate has been issued has priority as a pledge over the *prima facie* title acquired by a subsequent purchaser for value without notice, who receives from the holder the certificate for such shares subsequently issued, when the written assignment has not been registered or entered on the books of the corporation.

As we understand the controversy, it is not necessary to decide whether "Exhibit A" is technically a mortgage of the stock or an executory contract to deliver the certificate when issued, or an agreement that Jenkins should hold the stock for the plaintiff's benefit, and whether it is valid *inter partes,* for by neither of these contingencies would the plaintiff acquire priority. So the ultimate question is whether the contract gave the plaintiff priority as pledgee of the stock.

Under both the civil and the common law the characteristic feature of a pledge is the possession by the pledgee of the pledged property. The transfer or delivery of such possession constitutes the very essence of the contract. It is true that the delivery of possession may be actual, constructive, or symbolic, as, for example, the contents of a warehouse by the delivery of a key or a warehouse receipt, or stock by the delivery of a certificate, but a bare agreement to deliver is never equivalent to a fictitious, constructive, or symbolic delivery. Schouler on Personal Property, 513; Cool on Stock and Stockholders, sec. 465; 4 Thompson on Corporations, sec. 4200, *et seq.; Propst v. Roseman,* 49 N. C., 130; *Thompson v. Andrews,* 53 N. C., 453; *McCoy v. Lassiter,* 95 N. C., 88; *Bank v. Johnston,* 161 N. C., 509. In section 4200, *supra,* Thompson says: "A pledge of stock by an instrument in writing not accompanied

by a delivery of the certificate is not a pledge against third parties, nor is it good as against a judgment creditor of the pledger. Delivery is always essential to the creation of a pledge." Among other authorities sustaining this position he cites *Casey v. Cavaroc,* 96 U. S., 467, in which *Mr. Justice Bradley,* holding that without possession there can be no privilege as against third persons in property claimed as a pledge, further observed: "Bad faith, it is true, would defeat the pledge, though the creditor had possession. But want of possession is equally fatal, though the parties may have acted in good faith. Both are necessary to constitute a good pledge, so as to raise a privilege against third persons. The requirement of possession is an inexorable rule of law, adopted to prevent fraud and deception; for, if the debtor remains in possession, the law presumes that those who deal with him do so on the faith of his being the unqualified owner of the goods."

We have not overlooked certain decisions in which it is suggested that since shares of stock are not capable of manual delivery, a transfer of possession may be made without delivery of the certificate, especially when no certificate has been issued; but even if the contract between the plaintiff and Jenkins is enforceable *inter partes,* it cannot in any event prevail as against the title of an innocent purchaser for value who has acquired ownership by the actual possession and proper endorsement of the certificate of stock. Exceptions 1, 2, 3, 4, 6, 21, 22 are, therefore, overruled.

The other exceptions relating to the instruction that as to the fourth issue the burden of proof was on the plaintiff, likewise are untenable. The burden of proof here is not determined by the priority of claims; nor is the plaintiff's position similar to that of an innocent purchaser of a negotiable instrument, the execution of which was procured by fraud. His situation more nearly approximates that of a maker or other person who seeks to impeach the validity of the instrument on the ground of fraud, and thereby assumes the burden of establishing his allegation. *Board of Education v. Makely,* 139 N. C., 31; *Walker v. Carpenter,* 144 N. C., 674; *Bowser v. Wescott,* 145 N. C., 57; *Winslow v. Hardwood Co.,* 147 N. C., 276; *Sanford v. Eubanks,* 152 N. C., 697.

We find no sufficient cause for disturbing the judgment as rendered by the court.

No error.