Stratton v. Royal Bank of Can., 2010 NCBC 2.

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                           SUPERIOR COURT DIVISION

COUNTY OF WAKE                                 07 CVS 15079

| | | |
|---|---|---|
| ELIZABETH BRUCE STRATTON, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| ROYAL BANK OF CANADA, | ) | |
| Defendant | ) | |

THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, by order of the Chief Special Superior Court Judge for Complex Business Cases, is before the court upon the Defendant's Motion for Summary Judgment ("Motion") as to all claims ("Claims") stated in the Complaint, pursuant to the provisions of Rule 56, North Carolina Rules of Civil Procedure ("Rule(s)").

After considering the arguments, briefs, other submissions of counsel and appropriate matters of record, as discussed *infra*, the court concludes that the Defendant's Motion should be GRANTED.

*McDaniel & Anderson, LLP by L. Bruce McDaniel, Esq. for Plaintiff.*

*Poyner & Spruill, LLP by David Dreifus, Esq. and John O'Hale, Esq. for Defendant.*

Jolly, Judge.

I.

PROCEDURAL BACKGROUND

[1]     On September 20, 2007, Plaintiff Elizabeth Bruce Stratton ("Stratton") filed her Complaint for Declaratory Judgment, Related Mandatory Court Order, and Request for Jury Trial ("Complaint").

[2]     On December 14, 2007, Stratton filed a Motion to Substitute Party Defendant RBC Centura Banks, Inc. with Royal Bank of Canada ("RBC").  This court granted that motion on January 2, 2008.

[3]     In her Complaint, pursuant to various theories, Stratton prays that (a) the court issue a declaratory judgment against RBC to the effect that Plaintiff is the owner of all right, title and interest to at least 14,486 shares of RBC common stock as successor shares to five original Bank of Manteo common stock shares owned by Plaintiff, plus any additional shares to which she may be entitled by virtue of accretion through stock dividends and stock splits; (b) the court order RBC to issue the foregoing number of shares to Stratton and (c) Stratton recover from RBC any money dividends to which she would have been entitled by such successor shares.[1]

[4]     The court heard oral argument on the Motion, and it is ripe for determination.

---

[1] In her response to the Motion, Stratton attempts to "clarify" the Claims involved in the case, namely, declaratory judgment, conversion and unjust enrichment.  By way of its responsive briefs and arguments, Defendant appears to concede that in substance, the Plaintiff's Claims lie in alleged conversion and unjust enrichment.  Accordingly, the court considers such theories of recovery as a part of the Motion.

II.

FACTS

[5]     Unless otherwise indicated herein, the material facts reflected in paragraphs 6 through 21, 39 and 40 of this Opinion and Order exist, are undisputed[2] and are pertinent to the issues raised by the Motion.

[6]     In 1927, Matilda Ethridge purchased five shares of stock of the Bank of Manteo, represented by certificate number 86.[3]

[7]     In 1933, Matilda Ethridge was listed as a shareholder in a Bank of Manteo document entitled "Stockholders Assent to Change."[4]  This was the last mention of Matilda Ethridge as a shareholder of the Bank of Manteo.

[8]     In 1935, Matilda Ethridge changed her name to Matilda E. Inge ("Inge").[5]

[9]     In 1962, the Bank of Manteo merged with Planters National Bank and Trust Company ("Planters Bank"),[6] with 2.8 shares of Planters Bank stock being issued for every one share of Bank of Manteo stock.[7]  At this time, the year-round population of Manteo was approximately 800 people.[8]  Plaintiff Stratton, Inge's daughter, was in college at the time of the merger.  Stratton had been banking with Bank of Manteo, and became aware that Planters Bank had acquired the Bank of Manteo when she received a new checkbook reflecting the Planters Bank name.[9]

---

[2] It is not proper for a trial court to make findings of fact in determining a motion for summary judgment under Rule 56.  However, it is appropriate for a Rule 56 order to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusions with regard to summary judgment. *Hyde Ins. Agency v. Dixie Leasing*, 26 N.C. App. 138 (1975).
[3] E. Stratton Aff., ¶ 2 (Resp. Mot. Summ. J., Ex. A).
[4] Def. Br. Supp. Mot. Summ. J., 5, citing Ex. D.
[5] E. Stratton Aff., ¶ 3.
[6] Mot. Summ. J., Exs. F, I and J.
[7] Mot. Summ. J., Ex. J.  *See also* Ans., ¶ 9.
[8] Pl. Br. Supp. Mot. Summ. J., Ex. G, 2.
[9] E. Stratton Dep., 29:17-30:11.

[10]     At the time of the merger, the Bank of Manteo did not recognize Inge as a shareholder.[10]

[11]     Inge died in 1980.[11]  She had lived in Manteo, North Carolina for most of her life.[12]  She was survived by Stratton, who served as executrix of Inge's estate.[13] Stratton is a citizen and resident of Dare County, North Carolina.[14]

[12]     In 1982, Stratton discovered the stock certificate for five shares of stock of the Bank of Manteo.[15]  According to Stratton, Inge had been private with respect to her finances, and Stratton had not known anything of her mother's business.[16]

[13]     As executrix of Inge's will, Stratton did not list the Bank of Manteo stock certificate as property of the Inge estate.[17]  On the Application for Probate and Letters Testamentary, in response to a space provided for Stratton to list any "stocks and bonds," Stratton responded, "[n]one."[18]  In her submission of a Final Accounting, dated August 15, 1986, Stratton did not list any stocks or bonds as belonging to the Inge estate.[19]

[14]     In 1984 or 1985, Stratton asked a bank employee in the Planters Bank branch in Manteo to allow her to review a book of Bank of Manteo stocks held by the bank.[20]

---

[10] Mot. Summ. J., Ex. E.  Stratton argues this document is "highly suspect."  Corr. Resp. Br. Mot. Summ. J., 7.  *See also id.* at 6.  Stratton does, however, admit Inge had been "lost" as a shareholder by the time of the merger.  *Id.* at 8.
[11] E. Stratton Aff., ¶ 3; Mot. Summ. J., Ex. B.
[12] Br. Supp. Mot. Summ. J., 6, excepting the years 1951-53 during which Inge lived in Missouri.
[13] E. Stratton Aff., ¶¶ 4-5.
[14] Compl., ¶ 2.
[15] E. Stratton Dep., 32:14-24 (Resp. Mot. Summ. J., Ex. B).  *See also* E. Stratton Aff., ¶ 8.
[16] E. Stratton Dep., 56:11-57:11.
[17] *Id.* at 35:16-36:4.
[18] Def. Br. Supp. Mot. Summ. J., 13, Ex. B.
[19] Mot. Summ. J., Ex. C.  *See also* E. Stratton Aff., ¶ 9.
[20] E. Stratton Dep., 37:5-15.

[15] In 1985, Stratton asked a stockbroker to give her information about the stock. When he told her "just to leave it alone," Stratton assumed the stock was of value and continued to hold it.[21]

[16] In 1985 or 1986, after an inquiry by Stratton's husband concerning what Stratton should do with the stock, an attorney in Manteo told Stratton's husband he did not have time to handle her request about the stock certificate.[22] Stratton was aware of this conversation.

[17] In 1986 or 1987, Stratton spoke with a retired attorney in Burgaw with regard to the value of the stock certificate. He advised her to seek advice from a law firm in Elizabeth City, which she did.[23] The attorney in Elizabeth City with whom she spoke requested a retainer.[24] Stratton paid his law firm a small retainer, but subsequently chose not to pursue the matter further at that point.[25]

[18] In November 1990, The Planters Corporation merged with Peoples Bancorporation to form Centura Banks, Inc., on the basis of a one-for-one share exchange.[26] Centura Banks, Inc. was the parent company of Centura Bank.[27]

[19] In June 2001, Centura Banks, Inc. was indirectly acquired by RBC, with 1.684 shares of RBC stock issued for each share of Centura Banks, Inc. stock.[28] RBC Centura Banks, Inc. is a wholly-owned subsidiary of RBC.[29]

---

[21] *Id.* at 38:16-39:25.
[22] *Id.* at 42:1-13.
[23] *Id.* at 43:14-44:18.
[24] *Id.* at 44:19-24.
[25] *Id.* at 45:8-21.
[26] Ans., ¶ 11.
[27] *Id.* at 4 ("Fifth Defense").
[28] *Id.* at ¶ 12.
[29] *Id.* at 3 ("Second Defense").

[20]    In 2003, Stratton asked her stepson, Steve Stratton, whether he would like to look into the stock certificate.[30]

[21]    Stratton's request for replacement stock certificates and unpaid stock and money dividends was refused by RBC Centura Banks, Inc., on or about September 8, 2006.[31]

## III.

## DISCUSSION

[22]    Under Rule 56(c), summary judgment is to be rendered "forthwith" if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there exists no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.  When the forecast of evidence demonstrates that the plaintiff cannot satisfy an essential element of a claim or overcome an affirmative defense established by the defendant, summary judgment for the defendant should be granted.  *Grayson v. High Point Dev. Ltd. P'ship*, 175 N.C. App. 786, 788 (2006).  In considering a Rule 56 motion, the court views the evidence in the light most favorable to the nonmoving party.  *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733 (1998).

---

[30] E. Stratton Dep., 50:18-51:11.
[31] Compl., ¶ 15.

IV.

PLAINTIFF'S CLAIMS

A.

Declaratory Judgment

1.

The Claim

[23]    In this case, the Plaintiff seeks a declaration that she is entitled, among other things, to at least 14,486 shares of RBC common stock as successor shares to the five original Bank of Manteo common stock shares that Plaintiff inherited from her late mother.

[24]    Plaintiff's Claim for declaratory relief generally is in the nature of an equitable action.  However, her Claim for an award of RBC stock, plus unpaid dividends, appears to be one for coercive relief against RBC, which in substance seeks imposition of a constructive trust to Plaintiff's benefit.

[25]    G.S. 1-253 provides:

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree.

[26]    Our courts have jurisdiction to render declaratory judgments only when the pleadings and evidence disclose the existence of an actual controversy between parties having adverse interests in the matter in dispute.  *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234 (1984).

[27]    A claim for declaratory judgment may be barred to the same extent that a claim for substantive relief on which it is based would be barred.  Strong's North Carolina Index 4th, Declaratory Judgments § 26 (citing *Plimpton v. Cooper*, 141 F. Supp. 2d 573 (W.D.N.C. 2001), *aff'd*, 21 Fed. Appx. 159 (4th Cir. 2001)).

## 2.

## Defenses

[28]    In response to Plaintiff's Claim for declaratory relief, the Defendant raises defenses of lack of standing, laches and judicial estoppel.  To Plaintiff's Claim for an award of RBC shares and dividends, Defendant raises defenses of laches and expiration of the statute of limitations.

## a.

## Standing

[29]    RBC argues that to the extent that any cause of action exists, that cause of action remains with the Inge estate and must be prosecuted, if at all, in the name of the estate and not in the name of Stratton, individually.  As such, RBC contends, Stratton is not a proper party to this action, and the action must be dismissed.[32]

[30]    Rule 17(a) requires every claim to be prosecuted or defended in the name of the real party in interest.  *Whittaker v. Furniture Factory Outlet Shops*, 145 N.C. App. 169, 174-75 (2001).  This is "the party who by substantive law has the legal right to enforce the claim in question," *Reliance Ins. Co. v. Walker*, 33 N.C. App. 15, 19 (1977) (internal citation omitted), and more specifically, is "a party who is benefited or injured by the judgment in the case," *id.* at 18 (internal citation omitted).

---

[32] Ans., 6.

[31] A party to a contract or a direct estate beneficiary has standing under G.S. 1-254 to file a declaratory judgment action under G.S. 1-253. *Whittaker*, 145 N.C. App. at 173. Specifically, G.S. 1-254 provides:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise, and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof.

[32] Stratton is a person interested under Inge's will[33] and, as such, may seek a declaration of rights arising from the will, including her ownership as to the stock in question. *See, e.g.*, G.S. 1-254. Moreover, as a direct beneficiary to her mother's interest in the Bank of Manteo stock, Stratton has standing under G.S. 1-254 to file a declaratory judgment action under G.S. 1-253. Finally, although Inge's estate may be a procedurally correct entity to bring this claim, Stratton's position as the direct beneficiary means she will be benefited or injured by the judgment in this case. *See, e.g.*, *Reliance Ins. Co. v. Walker*, 33 N.C. App. 15, 18-19 (1977). As such, the court concludes that Stratton is a proper party to this action, and the action should not be dismissed for lack of standing.

b.

Laches

[33] Laches is an equitable doctrine "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence

---

[33] *See* Compl., ¶ 1; E. Stratton Dep., Ex. 3.

has been lost, memories have faded, and witnesses have disappeared." *Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-49 (1994). This doctrine may be raised properly by a motion for summary judgment. *Williams v. Blue Cross Blue Shield*, 357 N.C. 170, 181 (2003). It is an available affirmative defense in a declaratory judgment action. *Taylor v. Raleigh*, 290 N.C. 608, 622-23 (1976).

[34]    Lapse of time is not the controlling or most important element to be considered in determining whether laches is available as a defense. *Taylor v. N.C. Dep't. of Transp.*, 86 N.C. App. 299, 304-05 (1987), citing *Harris & Gurganus v. Williams*, 37 N.C. App. 585 (1978). Rather, laches applies "[i]n equity, where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim . . . ." *Williams*, 357 N.C. at 181. As such, the determination of whether a delay constitutes laches depends upon the facts and circumstances of each case. *Cieszko v. Clark*, 92 N.C. App. 290, 297 (1988).

[35]    The burden of proof is on the party who pleads the affirmative defense of laches. *Taylor v. Raleigh*, 290 N.C. at 622.

[36]    Laches requires a showing that (a) the plaintiff negligently failed to assert an enforceable right within a reasonable time and (b) the defendant was prejudiced by the delay in bringing the action. *Taylor v. N.C. Dep't. of Transp.,* 86 N.C. App. at 305, citing *Costin v. Shell*, 53 N.C. App. 117, 120, *disc. rev. denied*, 304 N.C. 193 (1981). *See also Taylor v. Raleigh*, 290 N.C. at 622-23. In its determination in the instant matter, the court considers (a) whether the pleadings, affidavits and exhibits show any dispute as to the facts upon which RBC relies to show laches on Stratton's part; (b) if

not, whether the undisputed facts, if true, establish laches and (c) if so, whether it is appropriate to grant RBC's Motion. *Id.* at 621.

[37] Laches requires information or knowledge of the party against whom the defense is asserted about the claims at issue. *See Speight v. Branch Banking & Trust Co.*, 209 N.C. 563 (1935). *See also Cieszko*, 92 N.C. App. at 298. The court may charge a plaintiff with knowledge of the claim. *See*, *e.g.*, *Allen v. Burlington Bd. of Adjustment*, 100 N.C. App. 615, 619 (1990); *Save Our Schools of Bladen County, Inc. v. Bladen County Bd. of Educ.*, 140 N.C. App. 233, 236-37 (2000).

[38] Courts generally "measure laches by the pertinent statute of limitations wherever the latter is applicable to the situation and [do not] regard the delay of the actor to assert the right within that period as estoppel, unless upon special intervening facts demanding that exceptional relief." *Creech v. Creech*, 222 N.C. 656, 663 (1943).

[39] It is undisputed that the Bank of Manteo did not consider Inge to be a shareholder as of 1962, when the bank merged with Planters National Bank. Given the small size of the town and Inge's extended residence there over several decades, the court determines there is no genuine question that Inge knew of the merger. There is no evidence that Inge received dividends or any other incidents of share ownership during that time, and the court concludes that it is undisputed that Inge knew or should have known the Bank of Manteo and its successors no longer considered her to be a shareholder. From 1962 until her death in 1980, Inge did not pursue her rights as a shareholder.

[40] It is also undisputed that Stratton knew of the merger when it occurred. Moreover, there is no evidence that Stratton knew of or received dividends on behalf of

Inge's estate. Accordingly, the court further concludes that at the time of Stratton's discovery of the stock certificates, Stratton knew or should have known that the Bank of Manteo and its successors did and do not consider Inge to be a shareholder. In fact, in 1984 she looked at Planters Bank's records relative to Bank of Manteo stock. Further, between 1985 and 1987, she made inquiries of a stockbroker and at least two attorneys about her rights relative to the Bank of Manteo stock and its value. However, Stratton did not further pursue her rights as a shareholder until 2006.

[41] RBC suffered prejudice because of Inge and Stratton's delay in bringing suit. Among other things, the passage of time has (a) made appropriate written records unavailable and (b) precluded RBC or its predecessors from talking effectively with witnesses or Inge, who either now are deceased or whose memory about such a transaction that took place many years ago most likely would have deteriorated materially, to the prejudice of the Defendant.

[42] Inge and Stratton are charged with having knowledge at material times that the Bank of Manteo and its successors did not consider Inge to be a shareholder. Each negligently failed to assert an enforceable right, if there ever was one, within a reasonable time and RBC was prejudiced by their delay.

[43] For the foregoing reasons and based upon the pleadings, affidavits and exhibits presented, the court concludes that there exist no genuine issues as to any material fact that Inge and Stratton were guilty of laches with regard to Plaintiff's Claim for declaratory judgment, including her Claim for an award of RBC stock and dividends.

c.

## Judicial Estoppel

[44]    Because the court concludes that as a matter of law the defense of laches is fatal to Plaintiff's claim for declaratory judgment, it is not necessary for the court to consider this defense in its analysis.

d.

## Statute of Limitations

[45]    RBC suggests that Stratton's request that the court compel RBC to declare her owner of RBC shares is coercive in nature and in substance seeks imposition of a constructive trust upon RBC for the benefit of Plaintiff.  Defendant contends such an action is barred both by laches and applicable statutes of limitation.[34] RBC compares this situation to the case of *Jarrett v. Green*, a case in which the plaintiff sued to impose a constructive trust upon shares of stock.  230 N.C. 104, 107 (1949).  In that case, the North Carolina Supreme Court stated that both laches and the statute of limitation served as defenses, and the applicable statute of limitations is ten years.  *Id.*

[46]    A constructive trust is an equitable tool used to work out a remedy. *Teachey v. Gurley*, 214 N.C. 288, 292 (1938).  It is one

> raised by equity in respect to property which has been acquired by fraud, or where though acquired originally without fraud, it is against equity that it should be retained by the person who holds it.  This type of trust . . . arises purely by construction of equity independently of any contract or of any presumed intention of the parties to create a trust and is generally thrust on the trustee for the purpose of working out the remedy.  The relief in such cases is predicated on fraud and not trust.  Equity declares the trust in order that it may lay its hands on the thing and wrest it from the possession of the wrongdoer.

---

[34] Br. Supp. Def. Mot. Summ. J., 22.

*Id.  See also Roper v. Edwards*, 323 N.C. 461, 464 (1988).

[47]    In an action to enforce a constructive trust, the action is not based on contract but rather "the original wrongful or tortuous act of the person holding title . . . . A cause of action arises when the wrong is committed.  Therefore, the statute of limitations immediately begins to run and the ten-year statute applies, unless sooner barred under the doctrine of laches."  *Teachey*, 214 N.C. at 293-94.  *See also* G.S. 1-56.

[48]    When a party specifically alleges fraud and or mistake as a basis for imposing a constructive trust, the party's ability to obtain the remedy of a constructive trust depends on the party's ability to bring an action to prove fraud or mistake.  *J. Lee Peeler & Co. v. Makepeace*, 96 N.C. App. 118, 120 (1989).  Moreover, the three-year statute of limitations applicable to fraud and mistake applies.  *Id.*

[49]    In *Howell v. Alexander*, 3 N.C. App. 371, 382 (1969), the Court of Appeals determined the ten-year statute of limitations for a constructive trust began to run when the defendant exercised dominion over the subject property inconsistent with its rights and in a manner adverse to the plaintiff's interest, which would put the plaintiff on notice that the defendant was claiming the property adversely to the plaintiff.

[50]    The court has concluded, above, that Plaintiff's Claim for declaratory relief, including her Claim that RBC be compelled to declare her owner of the RBC shares and dividends, is barred by the equitable defense of laches.  Further, based upon the pleadings, affidavits and exhibits presented, the court concludes that to the extent Stratton's requested relief is based upon any theory of constructive trust, there exist no genuine issues as to any material fact that the only possible statutes of limitation –

either three years, under G.S. 1-52 or ten years, under G.S. 1-56 – expired prior to the filing of this civil action.

B.

Conversion

1.

The Claim

[51]    Plaintiff argues that the allegations of the Complaint and the forecast of evidentiary facts will support a Claim against RBC for conversion.

[52]    Conversion is "an unauthorized assumption and exercise of the right of ownership over the goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439 (1956).  At its core, conversion "is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from the act." *Lake Mary Ltd. P'ship. v. Johnston*, 145 N.C. App. 525, 532 (2001) (internal citation omitted).  Instead, "[t]he general rule is that there is no conversion until some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property." *Id.*, citing 18 Am. Jur. 2d, Conversion, § 1, p. 158.  As such, a cause of action for the tort of conversion requires two elements: (a) ownership in the plaintiff and (b) a wrongful conversion by the defendant.  *Id.*

[53]    Though a stock certificate symbolizes a stockholder's incorporeal right and is not stock itself, it is prima facie evidence of stock ownership. *Castelloe v. Jenkins*,

186 N.C. 166, 170 (1923). The possession of a certificate, with a power to transfer it, is prima facie evidence of title. *Id.* at 171.

[54] An assignment of a stock certificate upon a valid consideration may be made by mere delivery; an endorsement or instrument in writing is not necessary to pass the title. *Id.* at 172 (citation omitted).

[55] If conversion takes place by way of a wrongful taking, then no demand and refusal of return is necessary. *Porter v. Alexander*, 195 N.C. 5, 7 (1928). *See also Trs. of Univ. of North Carolina v. State Nat'l Bank*, 96 N.C. 280, 285 (1887).

[56] If there is no wrongful taking, i.e., if the defendant rightfully comes into possession and then refuses to surrender the goods, then demand and refusal is necessary for the tort of conversion to exist. *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 310 (2004), *cert. denied*, 359 N.C. 286 (2005).

[57] In *Mastellone v. Argo Oil Co.*, the Supreme Court of Delaware held that even though a stockholder remains in possession of a stock certificate, a corporation may tortiously convert the shareholder's stock by acting inconsistently with the shareholder's rights, regardless of whether the shareholder had knowledge of the conversion. 46 Del. 102, 109 (1951). In *Mastellone*, there was no suggestion of concealment or fraud. *Id.* However, the plaintiffs in *Mastellone* argued conversion only accrues when there has been a demand and a refusal. *Id.* at 110. The court concluded that requiring a demand and refusal in that instance would be futile as the conversion had taken place several years previously. *Id.* at 110-11. Accordingly, the court determined the statute of limitations had already passed. *Id.* at 111. While the

decisions of the Supreme Court of Delaware certainly are not binding on this court, it does recognize that court's analysis as instructive.

2.

### Statute of Limitations Defense

[58]   Defendant contends that the statute of limitations on a claim for conversion expired before Plaintiff filed this civil action.

[59]   The statute of limitations for the tort of conversion is three years, and it runs from the time of accrual of the cause of action. G.S. 1-52(4). Once the defendant pleads the statute of limitations, the plaintiff has the burden of showing that the action was brought within the applicable period. *Housecalls Home Health Care, Inc. v. State*, 682 S.E.2d 741, 744 (N.C. Ct. App. 2009) (quoting *Silver v. N.C. Bd. of Transp.,* 47 N.C. App. 261, 266 (1980) (citation omitted)). A cause of action normally accrues when the wrong is complete. *Raftery v. Wm. C. Vick. Constr. Co.*, 291 N.C. 180, 184 (1976). *See also Aydlett v. Major & Loomis Co.*, 211 N.C. 548, 551 (1937), which states that the statute of limitations begins to run only when a party becomes liable to an action. However, accrual also requires the injured party to be at liberty to sue. *Id.* at 551.

[60]   Here, Stratton argues that, per *Aydlett*, accrual did not take place until RBC denied Stratton's ownership rights. In *Aydlett*, the plaintiff was contractually limited to the frequency with which she could make demands upon the defendant to repurchase her stock. As such, her action could only accrue when she was able to make such a demand and the defendant refused to honor that demand. In the case *sub judice*, Inge was able to inquire as to her ownership rights at any point in time after becoming aware of the fact that the bank did not recognize them. Moreover, as soon as

RBC failed to recognize Inge as a shareholder, it would have become liable for any conversion or unjust enrichment. Accordingly, nothing else appearing, accrual began whenever Inge knew or should have known of actions taken by RBC inconsistent with its obligations to her as a shareholder.

[61]    Accrual does not, however, always require the injured party to know of the wrong. *Raftery*, 291 N.C. at 184. The statute does not expressly include a "discovery" clause. *White,* 166 N.C. App. at 310. Accordingly, in *Aetna Cas. & Sur. Co. v. Anders*, 116 N.C. App. 348, 350-51 (1994), the court appeared to have held that the statute of limitations began running with the last tortuous act and not with the discovery of the tort. *Id.* at 310.

[62]    Exceptions to this rule are torts grounded on allegations of fraud and mistake. *Matthieu v. Piedmont Natural Gas*, 269 N.C. 212, 215 (1967). In such cases, accrual takes place upon discovery by the aggrieved party of the facts constituting the fraud or mistake. G.S. 1-52(9). In her responsive brief, Stratton suggests the discovery standard of G.S. 1-52(9) should apply to her contended conversion Claim.[35]

[63]    A cause of action for fraud or mistake does not accrue until (a) the injured party discovers the facts constituting the fraud or mistake, *Hunter v. Guardian Life Ins. Co.*, 162 N.C. App. 477, 485, *disc. review denied*, 358 N.C. 543 (2004); *see also Lee v. Keck*, 68 N.C. App. 320, *cert. denied*, 311 N.C. 401 (1984); *Hiatt v. Burlington Indus., Inc.*, 55 N.C. App. 523, 526, *review denied* 305 N.C. 395 (1982), or (b) the fraud or mistake should have been discovered, *Sinclair v. Teal*, 156 N.C. 458 (1911), in the exercise of reasonable diligence, *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1 (1966). *See also Carlisle v. Keith*, 169 N.C. App. 674, 685 (2005).

---

[35] Pl. Resp. Opp. Mot. Summ. J., 18.

[64]     Whether a plaintiff should have discovered the facts constituting fraud or mistake more than three years prior to the institution of the action ordinarily is a question for the jury. *North Carolina Nat'l Bank v. Carter*, 71 N.C. App. 118, 124 (1984), citing *Johnson v. Ins. Co.*, 44 N.C. App. 210, 222 (1979), *rev'd on other grounds*, 300 N.C. 247 (1980); *Little v. Rose*, 285 N.C. 724, 727. *See also Hiatt,* 55 N.C. App. at 526. However, failure of a plaintiff to exercise due diligence in discovering fraud or mistake can be determined as a matter of law where it is clear that there was both capacity and opportunity to discover the fraud. *Hiatt*, 55 N.C. App. at 526. *See also Huss v. Huss*, 31 N.C. App. 463 , 468 (1976). In *Peacock v. Barnes*, 142 N.C. 215, 218 (1906), the Supreme Court stated:

> A man should not be allowed to close his eyes to facts readily observable by ordinary attention, and maintain for his own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish.

[65]     Here, the court concludes that, as a matter of law, any underlying cause of action for fraud and mistake accrued, at the latest, in 1982, when Stratton discovered Inge's Bank of Manteo stock certificates. That Stratton discussed the value of the stock certificate with at least three professionals over a period of several years suggests she had both the capacity and opportunity to discover any fraud or mistake committed by RBC or its predecessors when she discovered Inge's stock certificate. Because (a) the statute of limitations for fraud and mistake is three years and (b) Stratton did not file any action until 2007, approximately twenty-six years after these actions accrued, unless the Defendant for some reason is estopped from pleading the statute of limitations as a

defense, the statute as to any conversion Claim expired prior to filing of this civil action, and Stratton may not pursue such a Claim against RBC.

[66]    The Plaintiff argues that Defendant should be equitably estopped from pleading the statute of limitations as a defense to this Claim.  Our courts have held that a plaintiff's lack of reasonable diligence in filing suit for conversion may be time-barred, but that such a defense may be subject to the plaintiff's claim of equitable estoppel. *White*, 66 N.C. App. at 311.  Equitable estoppel prohibits a party "from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct . . . ."  *Id.* at 305 (quoting *Friedland v. Gales*, 131 N.C. App. 802, 806 (1998)).

[67]    The essential elements of equitable estoppel are (a) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (b) the intention that such conduct will be acted on by the other party and (c) knowledge, actual or constructive, of the real facts.  *Parker v. Thompson-Arthur Paving Co.*, 100 N.C. App. 367, 370 (1990).  The party asserting equitable estoppel to a statute of limitations defense must have (a) a lack of knowledge and the means of knowledge as to the real facts in question and (b) relied upon the conduct of the party sought to be estopped to his prejudice.  *Id.*  Bad faith, fraud and intent to deceive are not necessary before the doctrine can be applied. *Hamilton v. Hamilton*, 296 N.C. 574, 576 (1979).  *See also Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC v. Brewer*, 2009 NCBC 10, 66-67 (N.C. Super. Ct. 2009).

[68]    Where the evidence suggests only one inference from undisputed facts, the doctrine of equitable estoppel is a question for the court.  *White*, 166 N.C. App. at

305. If, however, there are disputed facts with respect to the existence of the elements of equitable estoppel, the issue of estoppel is a question for the jury. *Id.*, citing *Friedland*, 131 N.C. App. at 809.

[69]     Though Stratton's possession of the stock certificate is prima facie evidence of her ownership of stock in the Bank of Manteo, the facts of this case are clear and undisputed that neither she nor Inge enjoyed such ownership after 1962. Moreover, there is no suggestion of concealment or fraud by the Bank of Manteo or its successors.  Whether or not any alleged taking was wrongful, the facts force the court to conclude that it occurred, at the latest, in 1962, and that both Stratton and Inge had adequate knowledge to create a duty to make a claim of ownership.

[70]     Moreover, the doctrine of equitable estoppel does not prevent RBC from using the statute of limitations as a defense.  While the records of RBC's predecessors are not ideal, neither the records nor the other facts presented suggest that RBC or its predecessors (a) falsely represented or concealed relevant information; (b) with the intent that Inge or Stratton act on such false representations or concealment and (c) with knowledge, actual or constructive, of the real facts regarding ownership of the stock at issue.  While Stratton lacks knowledge and the means of knowing how or why the Bank of Manteo failed to recognize Inge as a shareholder, she has not demonstrated that she relied upon any conduct by RBC or its predecessors to her prejudice.

[71]     Consequently, RBC is not equitably estopped from pleading the statute of limitations as a defense to this Claim.

[72]     For the foregoing reasons and based upon the pleadings, affidavits and exhibits presented, the court concludes that there exist no genuine issues as to any

material fact that the statute of limitations expired on any conversion Claim by Plaintiff prior to the filing of this civil action.

## C.

## Unjust Enrichment

## 1.

## The Claim

[73]    Plaintiff also argues that the allegations of the Complaint and the forecast of evidentiary facts will support a Claim against RBC for unjust enrichment.

[74]    The equitable doctrine of unjust enrichment "was devised . . . to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Perkins v. HealthMarkets, Inc.*, 2007 NCBC 25, 80 (N.C. Super. Ct. 2009), citing *Collins v. Davis,* 68 N.C. App. 588, 591 (1984).

[75]    To state a claim for unjust enrichment, a party must allege that property or benefits were conferred on a defendant under circumstances that give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received. *Id.* at 81, citing *Norman v. Nash Johnson & Sons' Farms, Inc.,* 140 N.C. App. 390, 417 (2000).  The claim does not require (a) demand to the potential defendant, (b) refusal of such demand or (c) awareness of the conversion.  *See Joyce v. Joyce Co.*, No. COA03-1314, 2004 N.C. App. LEXIS 2119, 11-12 (unpub).

[76]    To recover on a claim of unjust enrichment, a party must prove that "it conferred a benefit on another party, that the other party consciously accepted the

benefit, and that the benefit was not conferred gratuitously or by interference in the affairs of the other party." *Perkins,* 2007 NCBC at 79.

## 2.

## Statute of Limitations Defense

[77]    Defendant contends that the three-year statute of limitations on a claim for unjust enrichment expired before Plaintiff filed this civil action.  G.S. 1-52(1).  *See also Joyce*, 2004 N.C. App. LEXIS 2119 at 9-10.

[78]    Based upon the pleadings, affidavits and exhibits presented, the court concludes that there exist no genuine issues as to any material fact that the statute of limitations expired on an unjust enrichment Claim by Plaintiff prior to the filing of this civil action.

## V.

## CONCLUSION

[79]    Defendant RBC is entitled to summary judgment in its favor as to all Claims stated by Plaintiff in this civil action.

[80]    Accordingly, it is ORDERED that Defendant's Motion for Summary Judgment is GRANTED and this civil action hereby is DISMISSED.

[81]    Taxable costs are charged to the Plaintiff.

This the 5th day of February, 2010.